GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Anthony Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN PEREZ and ANDREA BROOKS, on behalf of themselves and those similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br><br>BATH & BODY WORKS, LLC; L BRANDS, INC.,<br><br>                    Defendants. | Case No.<br><br>Unlimited Civil Case<br><br>Amended Class Action Complaint for Fraud, Deceit, and/or Misrepresentation; Violation of the Consumer Legal Remedies Act; False Advertising; Negligent Misrepresentation; Unfair, Unlawful, and Deceptive Trade Practices; and Restitution (Unjust Enrichment).<br><br>Jury Trial Demanded |

Plaintiffs Carmen Perez and Andrea Brooks bring this action on behalf of themselves and all others similarly situated against Bath & Body Works, LLC and L Brands, Inc. (collectively "Defendants"). Plaintiffs' allegations against Defendants are based upon information and belief and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

### Introduction

1.      Defendants are large companies that sell skin care products under, inter alia, the brand name "Bath & Body Works." To increase their sales, Defendants trick consumers by making false claims about the capabilities of their products. Defendants do not disclose to consumers that their products are scientifically incapable of achieving the promised results.

2.      This case is about one of Defendants' product lines. Defendants market and sell a series of products as "WATER" and "HYDRATING." Defendants falsely represent that the hyaluronic acid, an ingredient in the products, "attracts and retains up to 1,000x its weight in water" to "instantly replenish moisture for smooth, hydrated skin" or "make skin look smoother and more supple." Defendants have profited enormously from their false marketing campaigns, while their customers are left with overpriced, ineffective skin care products.

### Parties

3.      Plaintiff Carmen Perez is, and was at all relevant times, and individual and resident of California. Ms. Perez currently resides in San Jose, California.

4.      Plaintiff Andrea Brooks is, and was at all relevant times, and individual and resident of California. Ms. Perez currently resides in Carpinteria, California.

5.      Defendant Bath & Body Works, LLC is a Delaware limited liability company with its principal place of business in Columbus, Ohio.

6.      Defendant L Brands, Inc. is a Delware corporation with its principal place of business in Columbus, Ohio.

7.     At all times herein mentioned, Defendants, individually and collectively, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership, and common enterprise.

8.     At all times herein mentioned, the acts and omissions of each Defendant concurred with and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

9.     At all times herein mentioned, each Defendant ratified each and every act or omission complained of herein. At all times herein mentioned, Defendants, individually and collectively, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

## Jurisdiction and Venue

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and at least one Defendant are citizens of different states.

11.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

13.     In accordance with California Civil Code Section 1780(d), Plaintiff Carman Perez

concurrently files herewith a declaration establishing that she purchased Bath & Body Works Water Hyaluronic Acid Hydrating Cream in a Bath & Body Works store in Milpitas, California. (Plaintiff 's declaration is attached hereto as Exhibit A.)

14.    Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

### Substantive Allegations

15.    The market for cosmetics is fiercely competitive. Cosmetics manufacturers continually attempt to gain market share by touting the latest ingredients in their products and marketing them as being capable of improving consumers' appearance.

16.    Even in an industry known for hype, Defendants' outrageous marketing practices stand out among those of their competitors. Defendants position themselves as being a "specialty" retail brand with significant benefits for consumers' health and physical appearance. As discussed below, Defendants' claims about their skin care products are not just hype; rather, they are demonstrably false.

17.    Under the brand name "Bath & Body Works,"[1] Defendants are large skin care companies that market, advertise and sell products such as skin creams, lotions, scrubs, shampoos, conditioners, scents, and body wash to consumers. Defendants sell their products at in their over 2000 company stores and on their proprietary Defendants' website, www.bathandbodyworks.com (the "Website").

18.    Defendants understand that consumers are concerned about looking youthful, reducing the appearance of wrinkles and fine lines on their faces, and maintaining healthy, clear skin. Defendants know that consumers are therefore willing to pay more for products that promise to make them look younger, keep their skin healthy, and reverse the signs of aging.

19.    Accordingly, Defendants have embarked on a long term advertising campaign to trick consumers into believing that many of their products contain cutting-edge scientific technologies

---

[1] Also referred to herein as "B&BW."

that will offer younger, healthier skin, when Defendants know that their claims are false or misleading to reasonable consumers.

**A. Defendants Make False and Misleading Claims About Their "Hyaluronic Acid" Line of Products.**

20.    Defendants sell various products as part of their "WATER" / "HYRDATING" line. These products include, without limitation:

    a.   B&BW Hyaluronic Acid Hydrating Body Cream (in varying scents, e.g., "cactus water," "rose water");

    b.   B&BW Hyaluronic Acid Hydrating Hand Cream (in varying scents);

    c.   B&BW Hyaluronic Acid Hydrating Body Wash;

    d.   B&BW Hyaluronic Acid Hydrating Body Gel Lotion; and

    e.   B&BW Hyaluronic Acid Mineral Body Polish.

(Collectively, the "Hyaluronic Acid Products.")

    **1.    Defendants Falsely Represent to Consumers that the Hyaluronic Acid Products Moisturize Skin by Attracting and Retaining Up To 1000x Its Weight in Water.**

21.    Throughout the class period, Defendants have made false and misleading marketing to trick consumers into believing that the Hyaluronic Acid Products contain unique moisturizing properties. Specifically, Defendants falsely represent that, because of the presence of hyaluronic acid in the Hyaluronic Acid Products, the products are capable of attracting and retaining large quantities of water presumably from the atmosphere into the user's skin, for long-lasting benefits. As explained below, however, these representations are misleading and false.

22.    For example, throughout the class period, the packaging for the Hyaluronic Acid Hydrating Body Cream states that the product contains "HYALURONIC ACID" that "attracts and retains up to 1,000x its weight in water" to "instantly replenish moisture for smooth, hydrated skin" or "make skin look smoother and more supple."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

23.    The packaging further states, in bulleted language that the product:

- "attracts and retains up to 1,000x its weight in water";

- "instantly replenish moisture for smooth, hydrated skin";

- "make skin look smoother and more supple";

- "Clinically tested to instantly lock in moisture";

- "Fast-absorbing formula immediately hydrates"; and

- "Hyaluronic acid is a water loving molecule."



24.     Moreover, in-store personnel were instructed to inform customers of that the hyaluronic acid in each product attracted and retained up to "1,000x its weight in water."

25.     The Website makes the exact same representations. In addition to prominently featuring photographs of the Hyaluronic Acid Products' containers, the website contains descriptions of the products that mirror the representations on the packages.

26.     The representations that Defendants make on the Hyaluronic Acid Products' boxes and containers are viewed by consumers who shop for their products, regardless of whether they shop at retail stores or online. At Defendants' instruction, retail stores make the containers available for consumers to view as they shop, and also prominently place photographs of the boxes and containers (which are provided by Defendants) on their websites for consumers to read.

> **2.     Defendants' Representations Regarding the Hyaluronic Acid Products Are False.**

27.     Defendants' representations regarding the Hyaluronic Acid Products are false and misleading.

28.     Defendants represent that the hyaluronic acid in their Hyaluronic Acid Products can attract and retain up to 1,000 times its weight in water. That representation is false. Hyaluronic acid is incapable of absorbing anywhere near 1,000 times its weight in water, even when it is in its anhydrous (i.e., waterless; completely dry) form.

29.     Hyaluronic acid is the most capable of absorbing water when it is in its anhydrous form. But the hyaluronic acid contained in the Hyaluronic Acid Products is already saturated with water. Indeed, the first ingredient in all of the Products is water. Because the hyaluronic acid contained in these products is already water-saturated, it is incapable of absorbing any additional water at all, let alone "attract[ing] and retain[ing] up to 1,000x its weight in water," as Defendants claim.

30.     Further, even were Hyaluronic Acid Products capable of absorbing additional water when applied to a consumer's face—an assumption that is unwarranted—Defendants' representation that hyaluronic acid is ever capable of absorbing up to 1000 times its weight in water is also false. In fact, hyaluronic acid has no particular ability to attract and retain water compared to other common compounds, much less to attract and retain 1,000 times its weight in water, or to do so to "replenish moisture," "hydrate skin," or make skin look "smoother" or "more supple."

31.     If hyaluronic acid were capable of absorbing water in the amounts advertised, it would act as a desiccant, not a moisturizer. That is because, if it were that hydroscopic, the acid would tend to draw water ***out*** of the skin, thereby achieving the ***opposite*** effect as the one the company advertises.

32.     Therefore, Defendants' representations on the Hyaluronic Acid Products' packaging and on the Website (i.e., (i) that the hyaluronic acid "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly replenish moisture for smooth, hydrated skin"; (iii) that the product "make skin look smoother and more supple"; (iv) "Fast-absorbing formula immediately hydrates"; and (v) that "Hyaluronic acid is a water loving molecule" are false.

33.     Finally, Defendants claim that the Product was "Clinically tested to instantly lock in moisture" is also false. Had Defendants actually done any "clinical testing," they would have known that all their representations were totally bogus.

**B. Defendants Intend to Continue to Falsely Advertise the Hyaluronic Acid Products.**

34.     The market for beauty and skin care is robust and continues to grow. Women increasingly have more disposable income, and thus are more likely to purchase more expensive brands, such as those sold by Defendants. Further, men increasingly are using beauty and skin care products. In addition, the ubiquity of social media has caused a surge in interest in looking young and camera-ready. Moreover, as the population ages, the interest in anti-aging products

1   has grown.

2       35.    To take advantage of this growing market, Defendants have a tremendous incentive to

3   falsely advertise their Hyaluronic Acid Products, as these products tap into consumers'

4   increasing concerns over aging and interest in higher-end products. Not surprisingly, these

5   products are among some of Defendants' best sellers.

6       36.    Because of the interest in these kinds of products, Defendants are able to charge

7   exorbitant amounts for their pseudo-science. Thus, given that Defendants' profits will likely

8   grow from selling over-priced products to a growing market for skin care products, Defendants

9   have an incentive to continue to make false representations.

10  **C. Plaintiffs' Experiences**

11      37.    Plaintiffs are reasonably diligent consumers, and when they purchased Defendants'

12  Products, they reasonably relied on Defendants' false representations.

13          **1.    Carmen Perez**

14      38.    Plaintiff Carmen Perez is a consumer who is interested in beauty products.

15  Approximately two years ago, in or around February or March 2019, she visited a B&BW store

16  in Milpitas, California, where she was shopping for a moisturizing product. She saw the B&BW

17  Hyaluronic Acid Hydrating Body Cream, and read on the package that (i) the hyaluronic acid in

18  the product "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly

19  replenish moisture for smooth, hydrated skin"; (iii) that the product "make skin look smoother

20  and more supple"; (iv) "Fast-absorbing formula immediately hydrates"; and (v) that "Hyaluronic

21  acid is a water loving molecule." She also read that the Product was "Clinically tested to

22  instantly lock in moisture." Finally, prior to her purchase, Defendants' agent confirmed and

23  remind Ms. Perez that the hyaluronic acid in the product attracts and retains up to 1,000x its

24  weight in water.

25      39.    Based on these representations, Ms. Perez believed that the product was capable of

26

moisturizing and hydrating her skin. Accordingly, she decided to purchase the product. She paid

approximately $16, but the purchase included other B&BW products that are not at issue here.

40.    She repeatedly used the product, but did not observe any improvement to her skin.

41.    Had Ms. Perez known that the Hyaluronic Acid Hydrating Body Cream is incapable of

attracting and retaining up to up to 1,000x its weight in water, she would not have purchased it,

or would have paid less for it.

42.    Ms. Perez continues to want to purchase products that could help improve the

appearance of her skin. She desires to purchase other cosmetic products from retailers such as

B&BW, and regularly visits stores where Defendants' products are sold. Without purchasing and

having the products professionally tested or consulting scientific experts, Ms. Perez will be

unable to determine if representations that Defendants make regarding the properties and features

of its products are true. Ms. Perez understands that the formulation of Defendants' Products may

change over time or that Defendants may choose to market other products that contain

misleading representations about the product. But as long as Defendants may use inaccurate

representations about the capabilities of their products, then when presented with Defendants'

advertising, Ms. Perez continues to have no way of determining whether the representations

regarding those capabilities are true. Thus, Ms. Perez is likely to be repeatedly presented with

false or misleading information when shopping and unable to make informed decisions about

whether to purchase Defendants' products. Thus, she is likely to be repeatedly misled by

Defendants' conduct, unless and until Defendants are compelled to utilize accurate

representations regarding the actual capabilities of hyaluronic acid.

**2.    Andrea Brooks**

43.    Plaintiff Andrea Brooks is a consumer who is interested in beauty products.

44.    While browsing the Website in late 2018, Ms. Brooks saw the Hyaluronic Acid

Products. She saw the images of the Hyaluronic Acid Products' packaging and container on the

Website, and read the representations made there. Among other things, she read the representations that (i) the hyaluronic acid in the product "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly replenish moisture for smooth, hydrated skin"; (iii) that the product "make skin look smoother and more supple"; (iv) "Fast-absorbing formula immediately hydrates"; and (v) that "Hyaluronic acid is a water loving molecule." She also read that the Product was "Clinically tested to instantly lock in moisture."

45.     Ms. Brooks reasonably understood these representations to mean that the Hyaluronic Acid Products would be exceptionally hydrating on her skin. On the basis of these representations, Ms. Brooks decided to purchase B&BW Hyaluronic Acid Hydrating Body Cream. On December 14, 2018, she paid approximately $30.00 for four tubes of Hyaluronic Acid Hydrating Body Cream.[2]

46.     She received the product shortly thereafter and began using it. She tried the Hyaluronic Acid Product. After trying it, she realized that they did not improve the hydration of her skin.

47.     Had Ms. Brooks known that any of Defendants' representations set forth in paragraph 44 above were false, she would not have purchased the Hyaluronic Acid Hydrating Body Cream, or would have paid less for it.

48.     Ms. Brooks continues to desire products that offer exceptional moisturizing qualities, regardless of whether those products contain hyaluronic acid. She desires to purchase other moisturizing products from retailers such as B&BW, and regularly visits stores where Defendants' products are sold. Without purchasing and having the products professionally tested or consulting scientific experts, Ms. Brooks will be unable to determine if representations that Defendants make regarding the properties and features of hyaluronic acid and/or the moisturizing properties of its products are true. Ms. Brooks understands that the formulation of the Hyaluronic

---

[2] Included in the purchase price, but not at issue here, was a tube of B&BW fresh sparkling snow hand cream.

Acid Products may change over time or that Defendants may choose to market other products with hyaluronic acid that contain misleading representations about the product. But as long as Defendants may use inaccurate representations about the moisturizing capabilities of hyaluronic acid, then when presented with Defendants' packaging, Ms. Brooks continues to have no way of determining whether the representations regarding those capabilities are true. Thus, Ms. Brooks is likely to be repeatedly presented with false or misleading information when shopping and unable to make informed decisions about whether to purchase Defendants' products. Thus, she is likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to utilize accurate representations regarding the actual capabilities of hyaluronic acid.

## Class Allegations

**A.    The Class**

49.    Plaintiffs seek to represent a "Class" of persons, defined as: "All natural persons who, between July 21, 2017 and the present, purchased, in California, any Hyaluronic Acid Product."

50.    Excluded from the Class are Defendants, their affiliates, successors and assigns, officers and directors, and members of their immediate families.

51.    The Class is so numerous that joinder of all members is impracticable. The precise number of members in the Class is not yet known to Plaintiffs, but they estimate that it is well in excess of 1,000 people.

52.    There are questions of law and fact that are common to the Class, including, but not limited to, the following:

- whether Defendants misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Hyaluronic Acid Products;

- whether Defendants represented that products in the Hyaluronic Acid Products have characteristics, benefits, uses or qualities that they do not have;

- whether Defendants misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products "attracts and retains up to 1,000 times its weight in water";

- whether Defendants misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products "instantly replenish moisture for smooth, hydrated skin";

- whether Defendants misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products "make skin look smoother and more supple";

- whether Defendants misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products "Fast-absorbing formula immediately hydrates";

- whether Defendants misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products "Hyaluronic acid is a water loving molecule";  are false.

- whether Defendants misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products was "Clinically tested to instantly lock in moisture";

- whether Defendants' nondisclosures and misrepresentations would be material to a reasonable consumer;

- whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the consumer protection statutes of California;

- whether Defendants were unjustly enriched;

- whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiffs and the members of the Class;

- whether Plaintiffs and the members of the Class are entitled to damages, restitution, and/or equitable or injunctive relief;

- whether Defendants breached their obligations to the Class;

- whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

- the amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

- whether class members are entitled to injunctive relief and other equitable relief and, if

1    so, what is the nature of such relief; and

2    •   whether class members are entitled to payment of actual, incidental, consequential,

3        exemplary, and/or statutory damages plus interest, and if so, what is the nature of such

4        relief.

5    53.   Plaintiffs' claims against Defendants are typical of the claims of the Class because

6    they and all other members of the class purchased the Hyaluronic Acid Products with the same

7    attendant advertising, warranties, and representations. With respect to the class allegations,

8    Plaintiffs were subjected to the exact same business practices and representations.

9    54.   Plaintiffs will fairly and adequately protect the interests of the Class.

10   55.   Plaintiffs have demonstrated their commitment to the case, has diligently educated

11   themselves as to the issues involved, and to the best of their knowledge does not have any

12   interests adverse to the proposed class.

13   56.   The questions of law and fact common to the members of the Class predominate over

14   any questions affecting only individual members.

15   57.   A class action is superior to other available methods for a fair and efficient

16   adjudication of this controversy as many members of the proposed Class have damages arising

17   from Defendants' wrongful course of conduct which would not be susceptible to individualized

18   litigation of this kind, including, but not limited to, the costs of experts and resources that may be

19   required to examine the business practices in question.

20   58.   Given the relative size of damages sustained by the individual members of the Class,

21   the diffuse impact of the damages, and homogeneity of the issues, the interests of members of the

22   Class individually controlling the prosecution of separate actions is minimal.

23   59.   There is no litigation already commenced for these class representatives, nor is there

24   anticipated to be subsequent litigation commenced by other members of the Class concerning

25   Defendants' alleged conduct. Consequently, concerns with respect to the maintenance of a class

26   action regarding the extent and nature of any litigation already commenced by members of the

Class are non-existent.

60.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

**Causes of Action**

**First Cause of Action**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, et seq.)**
**On Behalf of Plaintiffs and the Class**

61.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

62.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA").

63.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

64.     Plaintiffs and other members of the Class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

65.     The products that Plaintiffs and similarly situated members of the Class purchased from Defendants are "goods" within the meaning of California Civil Code § 1761.

66.     By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(5), Defendants represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods and/or services it sells are of a particular

1    standard, quality, or grade, when they are of another. In violation of California Civil Code

2    §1770(a)(9), Defendants advertised goods with intent not to sell them as advertised.

3        67.    Specifically, Defendants' acts and practices caused Plaintiffs and similarly situated

4    consumers to falsely believe (i) that the hyaluronic acid in the Hyaluronic Acid Products "attracts

5    and retains up to 1,000 times its weight in water from moisture in the atmosphere"; (ii) that the

6    hyaluronic acid in the Hyaluronic Acid Products "transforms atmospheric vapor into fresh, pure

7    water from the clouds"; (iii) that the hyaluronic acid in the Hyaluronic Acid Products provides

8    skin "with a continuous burst of intense hydration that lasts up to 72 hours"; (iv) that the

9    hyaluronic acid in Defendants' products "draws water vapor from the clouds to help lock in

10   moisture"; and (v) that the Hyaluronic Acid Products "transform[] atmospheric vapor into fresh,

11   pure water from the clouds, providing your skin with a continuous burst of intense hydration that

12   lasts up to 72 hours."

13       68.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the

14   unlawful methods, acts and practices alleged herein pursuant to California Civil Code

15   § 1780(a)(2).  Plaintiffs' remedies at law are inadequate, or will be inadequate, to cure and

16   prevent Defendants' ongoing conduct.  Such misconduct by Defendants, unless and until

17   enjoined and restrained by order of this Court, will continue to cause injury in fact to the general

18   public and the loss of money and property in that Defendants will continue to violate the laws of

19   California, unless specifically ordered to comply with the same. This expectation of future

20   violations will require current and future customers to repeatedly and continuously seek legal

21   redress in order to recover monies paid to Defendants to which Defendants are not entitled.

22   Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate

23   remedy at law to ensure future compliance with the Consumer Legal Remedies Act alleged to

24   have been violated herein.

25

26

69.     More than thirty days prior to the filing of the original Class Action Complaint, Ms. Brooks gave notice and demand that Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Defendants failed to do so in that, among other things, they failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

70.     Plaintiffs request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**Second Cause of Action**
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Plaintiffs and the Class**

71.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

72.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendants have made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of Hyaluronic Acid Products.

73.     Defendants have made representations and statements (by omission and commission) that lead reasonable consumers to believe: (i) that the hyaluronic acid "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly replenish moisture for smooth, hydrated skin"; (iii) that the product "make skin look smoother and more supple"; (iv) "Fast-absorbing formula immediately hydrates"; (v) that "Hyaluronic acid is a water loving molecule"; and (vi) that the product "Clinically tested to instantly lock in moisture." Defendants, however, deceptively failed to inform consumers that these representations are false.

74.     Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, paying less for the Hyaluronic Acid Products.

75.     Defendants' acts and omissions are likely to deceive the general public.

76.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

77.     The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

78.     Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

79.     Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

80.     Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendants from engaging in any such advertising and marketing practices in the future. Plaintiffs' remedies at law are inadequate, or will be

inadequate, to cure and prevent Defendants' ongoing conduct. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

81.    As a direct and proximate result of such actions, Defendants and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**Third Cause of Action**
**(Fraud, Deceit, and/or Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

82.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this complaint as if fully set forth herein.

83.    Defendants' representations to Plaintiffs and those similarly situated on the Website, on product packaging, on social media channels, and through their stores were false. In particular, these representations were false: (i) that the hyaluronic acid "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly replenish moisture for smooth, hydrated skin"; (iii) that the product "make skin look smoother and more supple"; (iv) "Fast-absorbing formula immediately hydrates"; (v) that "Hyaluronic acid is a water loving molecule"; and (vi) that the product "Clinically tested to instantly lock in moisture."

84.    Defendants knew that these representations were false when they made them.

Defendants run one of the largest cosmetics companies in the world. Accordingly, they chose the ingredients they incorporate in their products, and they are fully aware of the properties and actual capabilities of those ingredients. Defendants are also aware of scientific research (or the lack thereof) regarding those ingredients. Further, Defendants test their products on human skin, and such tests would have revealed the falsity of Defendants' representations.

85.    Defendants further concealed, suppressed, and omitted material facts that would have revealed that the representations regarding hyaluronic acid were false and misleading.

86.    Defendants' misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs and those similarly situated as to whether to purchase the Hyaluronic Acid Products.

87.    Plaintiffs and those similarly situated reasonably relied to their detriment on Defendants' representations. Specifically, Plaintiffs and those similarly situated purchased the Hyaluronic Acid Products because they believed Defendants' representations regarding hyaluronic acid. This reliance was reasonable because Plaintiffs and those similarly situated reasonably expected that Defendants would have scientific substantiation for their claims. Plaintiffs and those similarly situated had no reason to doubt that established "clinical skin care" company such as Defendants would not use sound science when developing and marketing their products.

88.    Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) the Hyaluronic Acid Products.

89.    Defendants had a duty to inform members of the Class at the time of their purchase that the hyaluronic acid in the Hyaluronic Acid Products: (i) that the hyaluronic acid "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly replenish moisture for smooth, hydrated skin"; (iii) that the product "make skin look smoother and more supple";

(iv) "Fast-absorbing formula immediately hydrates"; (v) that "Hyaluronic acid is a water loving molecule"; and (vi) that the product "Clinically tested to instantly lock in moisture." In making their representations and omissions, Defendants breached their duty to class members. Defendants also gained financially from, and as a result of, their breach.

90.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase Hyaluronic Acid Products.

91.    As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs and those similarly situated have suffered damages. In particular, Plaintiffs seek to recover on behalf of herself and those similarly situated the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Hyaluronic Acid Products and the price they would have paid but for Defendants' misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

92.    Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**Fourth Cause of Action**
**(Negligent Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

93.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

94.    In marketing and selling the Hyaluronic Acid Products to consumers, Defendants made the following false and misleading statements: (i) that the hyaluronic acid "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly replenish moisture for

smooth, hydrated skin"; (iii) that the product "make skin look smoother and more supple"; (iv) "Fast-absorbing formula immediately hydrates"; (v) that "Hyaluronic acid is a water loving molecule"; and (vi) that the product "Clinically tested to instantly lock in moisture." Defendants, however, deceptively failed to inform consumers that all of these statements are false. Defendants also deceptively failed to inform consumers that the hyaluronic acid in the Hyaluronic Acid Products is already saturated by the time it is applied to the a user's skin, and that to the extent it is even capable of absorbing moisture, it would absorb moisture from the user's skin, not from the atmosphere.

95. These representations were material at the time they were made. They concerned material facts that were essential to the decision of Plaintiffs and those similarly situated regarding how much to pay for the Hyaluronic Acid Products.

96. Defendants made identical misrepresentations and omissions to members of the Class regarding the Hyaluronic Acid Products.

97. Defendants should have known their representations were false, and had no reasonable grounds for believing them to be true when they were made. Defendants run one of the largest cosmetics companies in the world. Accordingly, they chose the ingredients they incorporate in their products, and they are fully aware of the properties and actual capabilities of those ingredients. Defendants are also aware of scientific research (or the lack thereof) regarding those ingredients. Further, Defendants test their products on human skin, and such tests would have revealed the falsity of Defendants' representations.

98. By and through such negligent misrepresentations, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants negligently induced Plaintiffs and those similarly situated, without limitation, to purchase the Hyaluronic Acid Products at the price they paid.

99. Plaintiffs and those similarly situated reasonably relied on Defendants'

representations. Specifically, Plaintiffs and those similarly situated paid as much as they did for Hyaluronic Acid Products because of the false and misleading representations described herein.

100.  Because they reasonably relied on Defendants' false representations, Plaintiffs and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price consumers paid for Hyaluronic Acid Products and the price they would have paid but for Defendants' misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**Fifth Cause of Action**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, et seq.)**
**On Behalf of Plaintiffs and the Class**

101.  Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

102.  Within four years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, in connection with the marketing of the Hyaluronic Acid Products, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a. falsely representing to Plaintiffs and those similarly situated that the hyaluronic acid in the Hyaluronic Acid Products "attracts and retains up to 1,000x its weight in water";

b. falsely representing to Plaintiffs and those similarly situated that the hyaluronic acid in the Hyaluronic Acid Products "instantly replenish moisture for smooth, hydrated skin";

c. falsely representing to Plaintiffs and those similarly situated that the hyaluronic acid in the Hyaluronic Acid Products provides skin "make skin look smoother and more supple";

d. falsely representing to Plaintiffs and those similarly situated that the hyaluronic acid in Defendants' products "Fast-absorbing formula immediately hydrates";

e. falsely representing to Plaintiffs and those similarly situated that the Hyaluronic Acid Products "Hyaluronic acid is a water loving molecule";

f. falsely representing to Plaintiffs and those similarly situated that the Hyaluronic Acid Products are "Clinically tested to instantly lock in moisture";

g. engaging in fraud and negligent misrepresentation as described herein;

h. violating the CLRA as described herein; and

i. violating the FAL as described herein.

103.   Plaintiffs and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by, without limitation, paying less for the Hyaluronic Acid Products.

104.   Defendants' acts and omissions are likely to deceive the general public.

105.   Defendants engaged in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

106.   The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

107.   As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for Hyaluronic Acid Products and the price they would have paid but for Defendants' misrepresentations), in an amount to be proven at

trial using econometric or statistical techniques such as hedonic regression or conjoint analysis;

108. Plaintiffs seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and unlawful.

109. Plaintiffs seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from offering the Hyaluronic Acid Products within a reasonable time after entry of judgment, unless Defendants modify the Website and other marketing materials to remove the misrepresentations and to disclose the omitted facts. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants were not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**Sixth Cause of Action**
**(Quasi-Contract Claim for Restitution (Unjust Enrichment))**
**On Behalf of Plaintiffs and the Class**

110. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

111. Plaintiffs and the Class members conferred a benefit on the Defendants by purchasing Hyaluronic Acid Products.

112. Defendants have been unjustly enriched in retaining the revenues from these purchases of Hyaluronic Acid Products. Retention of those revenues is unjust and inequitable because Defendants falsely represented: i) that the hyaluronic acid "attracts and retains up to 1,000x its weight in water"; (ii) that the product "instantly replenish moisture for smooth, hydrated skin";

(iii) that the product "make skin look smoother and more supple"; (iv) "Fast-absorbing formula immediately hydrates"; (v) that "Hyaluronic acid is a water loving molecule"; and (vi) that the product "Clinically tested to instantly lock in moisture." These representations caused injuries to Plaintiffs and those similarly situated because they paid a price premium due to the misleading labeling and advertising connected to the Hyaluronic Acid Products.

113.   Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and those similarly situated is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

114.   Plaintiffs, therefore, seeks an order requiring Defendants to make restitution to her and other members of the Class.  This remedy is pleaded as an alternative remedy, to the extent that Plaintiffs' remedies at law are inadequate to cure and prevent Defendants' ongoing conduct.

## Prayer for Relief

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against Defendants and in favor of Plaintiffs, and grant the following relief:

A.    Determine that this action may be maintained as a Class action with respect to the Classes identified herein and certify it as such under Rule 23 of the Federal Rules of Civil Procedure or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiffs as Class Representatives of their respective classes, and Plaintiffs' counsel as Class Counsel;

B.    Declare, adjudge and decree the conduct of the Defendants as alleged herein to be unlawful, unfair and/or deceptive;

C.    Enjoining Defendants, directly or through any company, corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any product containing hyaluronic acid, from making a representation about the product's or ingredient's

ability to hold, retain, or absorb water in any quantity and from any source unless, at the time the representation is made, Defendants possess and rely upon competent and reliable evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields, to support such representation. For the purposes of this paragraph, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.

   D. Enjoining Defendants, directly or through any company, corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any product containing plant stem cells, from making a representation about the product's or plant stem cells' ability to repair, rejuvenate, revitalize or otherwise improve the skin unless, at the time the representation is made, Defendants possess and rely upon competent and reliable evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields, to support such representation. For the purposes of this paragraph, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.

   E. Enjoining Defendants, directly or through any company, corporation, partnership, subsidiary, division, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any cosmetic product, to not provide to others the means and instrumentalities with which to make any representation prohibited by Paragraphs C and D above. For the purposes of this paragraph, "means and

instrumentalities" means any information, including, but not necessarily limited to, any advertising, labeling, or promotional, sales training, or purported substantiation materials, for use by trade customers in their marketing of such product or service.

F.      Award Plaintiffs and the Class actual, compensatory damages, as proven at trial;

G.      Award Plaintiffs and the Class restitution of all monies paid to Defendants as a result of unlawful, deceptive, and unfair business practices;

H.      Award Plaintiffs and the Class exemplary damages in such amount as proven at trial;

I.      Award Plaintiffs and the Class reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

J.      Award Plaintiffs and the Class such other further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

**Jury Trial Demand**

Plaintiffs demand a trial by jury.

Respectfully submitted,

Dated: July 21, 2021                    **GUTRIDE SAFIER LLP**

Seth A. Safier, Esq.
Anthony Patek, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiffs

## EXHIBIT A

I, CARMEN PEREZ, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I reside in San Jose, California. I purchased Bath & Body Works Water Hyaluronic Acid Hydrating Cream in or around the summer of 2019 from a Bath & Body Works store in Milpitas, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 21st day of July 2021, in San Jose, California.

DocuSigned by:

EFC876A3D8C9466...

_____

Carmen Perez

PEREZ DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION