1

2

3

4

5

6

7

GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Anthony Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

8

9

10

11

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

12

13

14

15

16

17

18

19

CARMEN PEREZ and ANDREA
BROOKS, on behalf of themselves and
those similarly situated,

Plaintiffs,

v.

BATH & BODY WORKS, LLC; L
BRANDS, INC.,

Defendants

Case No. 5:21-cv-05606-BLF

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE FIRST AMENDED
COMPLAINT

Judge:      Hon. Beth L. Freeman
Date:       July 14 , 2022
Time:       9:00 a.m.
Ctrm.:      3

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION ........................................................................................... 1

3   II.     BACKGROUND .............................................................................................. 2

4           A.      Bath & Body Works Falsely Advertises that Hyaluronic Acid in its
5                   Products "Attracts and Retains 1,000x Its Weight in Water" to Moisturize Skin. ............. 2

6           B.      Scientific Publications and Testing Show Unequivocally that the Claim
                    Hyaluronic Acid "Attracts and Retains Up to 1,000x Its Weight in Water" Is False. ........ 3

7
            C.      In a CLRA Notice Letter, Plaintiffs Informed B&BW of Unequivocal
8                   Evidence that the "1,000x" Claim Was False. ....................................................... 4

9           D.      Defendants Continue Their Fraud Despite Knowing the Claims Are False. .......... 6

10
    III.    LEGAL STANDARD ...................................................................................... 6
11
    IV.     ARGUMENT .................................................................................................. 7
12
            A.      The Court Should Judicially Notice the *PTR* Order Denying Summary
13                  Judgment On CLaims Substantially Identical to those here, and the Evidence of
14                  Falsity in *PTR*............................................................................................. 7

15          B.      Plaintiffs Adequately Plead False and Deceptive Advertising Claims .................. 8

16                  1.      CLRA  (Count 1), FAL (Count 2) and UCL (Count 5) ........................... 8

17                  2.      Fraud (Count 3) .................................................................................. 17

                    3.      Negligent Misrepresentation (Count 4).................................................. 19
18
                    4.      Unjust Enrichment (Count 6) ............................................................... 20
19
            C.      Plaintiffs Correctly Plead Equitable Relief in the Alternative ............................. 20
20
            D.      Plaintiffs Maintain Standing for All Causes of Action. ....................................... 21
21
                    1.      Plaintiffs Have Standing for Injunctive Relief......................................... 21
22
                    2.      Plaintiffs Have Standing to Sue for All False Advertising Involving
23                          the "1,000x Its Weight in Water" Claim. ............................................... 22

24          E.      This Court Has Personal Jurisdiction Over B&BW, Inc.................................... 23

25          F.      The FAC's References to "CLaim 2" are Moot................................................. 24

26          G.      The Court Should Grant Leave to Amend .......................................................... 25

27
    V.      CONCLUSION............................................................................................... 25
28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3   *Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2017 U.S. Dist. LEXIS 137881 (N.D. Cal. Aug.

4       1, 2017) ................................................................................................................. 20

5   *Aloudi v. Intramedic Rsch. Grp. LLC*, 729 F. App'x 514 (9th Cir. 2017) .................................... 12

6   *Arechiga v. Ford Motor Co.*, No. 17-01915, 2018 WL 5904415 (C.D. Cal. Sept. 10, 2018) ....... 20

7   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 6

8   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ................................................ 25

9   *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869 (N.D. Cal. 2019) .................................... 21

10  *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 6

11  *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2019) .................................................................. 16

12  *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8 (N.D. Cal. 2020) ............................... 15

13  *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623 (N.D. Cal. 2019) ..................... 14

14  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ............................................... 22

15  *Davis v. Hain Celestial Group*, 297 F. Supp. 3d 327 (E.D.N.Y. 2018) ....................................... 16

16  *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 U.S. Dist. LEXIS 61269 (N.D. Cal. Mar.

17      29, 2021) ............................................................................................................... 21

18  *Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*, 411 F. Supp. 3d 905 (N.D.

19      Cal. 2019) .............................................................................................................. 14

20  *Forcellati v. Hyland's, Inc.,* No. CV 12-1983-GHK (MRWx), 2015 U.S. Dist. LEXIS 3867 (C.D.

21      Cal. Jan. 12, 2015) ................................................................................................... 9

22  *In re Coca-Cola Prods. Mktg. and Sales Practices Litig.*, No.20-15742, 2021 WL 3878654 (9th

23      Cir. Aug. 31, 2021) ................................................................................................. 22

24  *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.* ("*In re JUUL*"), No. 19-md-

25      02913-WHO, 2020 U.S. Dist. LEXIS 197766 (N.D. Cal. Oct. 23, 2020) ........................ 21

26  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014) .................................................... 7

27  In *Tubbs v. AdvoCare Int'l, LP ("Tubbs I")*, No. CV 17-4454 PSG (AJWx), 2017 U.S. Dist.

28      LEXIS 147681 (C.D. Cal. Sep. 12, 2017) ................................................................. 11

*Leonhart v. Nature's Path Foods,* No. 13-cv-00492-BLF, 2014 WL 6657809 (N.D. Cal. Nov. 21, 2014) .................................................................................................................. 23

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ................................................................ 7

*Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017) ......................................................................................... 16

*Melgar v. Zicam*, 2016 U.S. Dist. Lexis 43990 (C.D. Cal. Mar. 30, 2016) ..................................... 9

*Miller v. Peter Thomas Roth, LLC*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854 (N.D. Cal. Jan. 22, 2020) .............................................................................. passim

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1348, 133 Cal. Rptr. 2d 207 (2003) ......................................................................... 9

*Philipson & Simon v. Gulsvig*, 154 Cal. App. 4th 347 (2007) .......................................................... 17

*Prescott v. Nestle USA, Inc.*, No. 19-cv-07471, 2020 WL 3035798 (N.D. Cal. June 4, 2020) ..... 15

*Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 U.S. Dist. LEXIS 59498 (N.D. Cal. May 6, 2015) ...................................................................................... 23

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)..................................................... 21

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012).............................. 7

*True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175 (C.D. Cal. 2007) ........................................ 13

*Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977 (9th Cir. 2002) ...................................... 7

*Vicuña v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) ....................................................................................... 20

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)................................................. 13, 19

*Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013)........................................... 23

*Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494 (N.D. Cal. Oct. 25, 2021) ........................................................................................ 9

**RULES**

Fed. R. Civ. P. 8(d)(2) ..................................................................................................... 21

1

2

## I.    INTRODUCTION

3       The First Amended Complaint ("FAC") in this action states a very straightforward case:

4   Defendants Bath & Body Works LLC and L Brands, Inc. (now Bath & Body Works Inc.)

5   (collectively, "B&BW") falsely advertise a line of Hyaluronic Acid Products, claiming that the

6   Products include an active ingredient (hyaluronic acid) which "attracts and retains up to 1,000x its

7   weight in water to make skin look smoother and more supple." The claim is demonstrably false.

8   Defendants' further claims—i.e., that the hyaluronic acid formulation is "fast-absorbing and

9   "clinically tested to instantly lock in moisture"—are also totally untrue. The FAC asserts six well-

10  established claims for false and deceptive advertising, including violations of the CLRA, FAL,

11  UCL, fraud, negligent misrepresentation, and unjust enrichment. In a recent case involving

12  materially identical false claims by the Peter Thomas Roth (PTR) companies, Judge Alsup called

13  the claim that hyaluronic acid can attract and retain 1,000 times its weight in water "bologna" and

14  "totally fraudulent." That case—which the FAC references and which Defendants admit is an

15  appropriate subject matter for judicial notice—survived a motion for summary judgment and went

16  to the eve of trial, based on much of the same evidence that will be submitted in this case, including

17  multiple peer-review studies and testing by an expert chemist.

18      Accordingly, this Court should deny B&BW's motion to dismiss the FAC for failure to state

19  a claim. The bulk of B&BW's motion is based on the false premise that Plaintiffs' are proceeding

20  on a lack of substantiation theory.  In truth, Plaintiffs have assembled numerous scientific studies

21  that report data on hyaluronic acid's ability to attract and retain water, and they all directly

22  contradict B&BW's false advertising. Defendants' requests for survey evidence and disclosure of

23  all scientific evidence in the pleadings are untimely, and seek to require complete discovery before

24  this case has even begun. Defendants disingenuously assert that Plaintiffs failed to do any testing

25  on B&BW's "Hyaluronic Acid" products, even though the FAC disclosed testing of those products'

26  key ingredient hyaluronic acid, which demonstrate the falsity of B&BW's claim that hyaluronic

27  acid can attract and retain 1,000 times its weight in water.

28

Defendants' remaining arguments are also incorrect.  Defendants' arguments that the FAC needs more specific allegations to support Plaintiffs' fraud claims and standing are without merit, as they ignore straight-forward facts pled in the Complaint. Defendants' argument that Plaintiffs lack standing to pursue false advertising claims involving B&BW products that they did not purchase ignores the fact that all the accused products—sold as B&BW's "Hyaluronic Acid" branded product line—involve the same putative active ingredient (hyaluronic acid) and false representation (that hyaluronic acid attracts and retains 1,000 times its weight in water), which establishes standing even under the "substantial similarity" standard set forth by B&BW. Their argument that *Sonner* requires dismissal is baseless too, as that case was not decided at the pleading stage, and is entirely inapposite here, where Federal Rule of Civil Procedure 8(d) explicitly allows pleading of theories and facts in the alternative. B&BW's argument that this Court lacks personal jurisdiction over BBWI is premature; the FAC plausibly asserts that both Defendants—both located in Columbus, Ohio—are engaged in a joint venture that reaches into California to market the accused products. That allegation must be accepted as true until discovery proves otherwise. Defendants' motion should be denied in the entirety.

## II.  BACKGROUND

### A.  Bath & Body Works Falsely Advertises that Hyaluronic Acid in its Products "Attracts and Retains 1,000x Its Weight in Water" to Moisturize Skin.

Defendants sell a line of branded "Bath & Body Works" skin care products that include hyaluronic acid as the headline ingredient, under names that include the phrase "Hyaluronic Acid Hydrating." These products include "Bath & Body Works Hyaluronic Acid Hydrating" Body Cream, Hand Cream, Body Wash, Body Gel Lotion, and the related B&BW "Hyaluronic Acid Mineral Body Polish," in a variety of scents (collectively, the "Hyaluronic Acid Products" or "Products").  (FAC,  ¶ 20.).

However, Defendants falsely represent that the hyaluronic acid in the Hyaluronic Acid Products is capable of attracting and retaining 1,000 times its weight in water. (*Id*., ¶¶ 21-26.) For example, the label for B&BW's "Hyaluronic Acid Hydrating Body Cream" states:

> "Naturally found in your skin, **Hyaluronic Acid** is a water-loving molecule that promotes skin health. A powerful hydrator and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

replenishing agent, <u>Hyaluronic Acid attracts and retains up to 1,000x its weight in water to make skin look smoother and more supple.</u>"

(*Id.*) (bold in original; underline added). The label further states that the Product is "Clinically tested to instantly lock in moisture" and is a "[f]ast-absorbing formula [that] immediately hydrates." (*Id.*). As detailed below, these claims are demonstrably false and misleading.

      **B.**    **Scientific Publications and Testing Show Unequivocally that the Claim Hyaluronic Acid "Attracts and Retains Up to 1,000x Its Weight in Water" Is False.**

Contrary to Defendants' claims on their packaging, hyaluronic acid is not a "water-loving" molecule (a reference to the scientific property of being "hydrophilic," a term derived from the Greek words for "water" and "love"), and it has no particular ability to attract or retain water, much less an ability to "attract and retain up to 1,000x its weight in water." (FAC, ¶¶ 27-38.) The FAC details this, noting that each monomer of hyaluronic acid contains only about 12 oxygen and nitrogen atoms capable of binding to water, each of which could bind only one or two water molecules. For B&BW's claim to be true, each one of those atoms would need to bind to thousands of water molecules, which is physically impossible. (*Id.*) The FAC further explains that, if hyaluronic acid attracted and retained 1,000 times its weight in water, it would suck moisture from a user's skin. (*Id.*, ¶ 31.)

There are numerous published scientific articles demonstrating that hyaluronic acid's ability to attract and retain water is minimal, with an average reported water absorption (measured as "non-freezable" water that is bound to the hyaluronic acid) of 0.36-0.86 grams of water per gram of hyaluronic acid (or about 0.36x to 0.86x the weight of hyaluronic acid). (FAC, ¶ 34-38.) Plaintiffs also possess "tests performed in conjunction with another lawsuit demonstrating that the claim hyaluronic acid attracts and retains 1,000 times its weight in water is false." (FAC, ¶ 96; *see also id.*, ¶ 40 ("Plaintiffs have obtained results of tests of hyaluronic acid's ability to attract and retain water from the air, as well as tests of its interactions with water. These results show that hyaluronic acid attracts only a fraction of its weight in water from the air, and dissolves without obvious effect when placed in water").) This very evidence defeated defendant's motion for summary judgment

1   in the *PTR* case, and is thus judicially noticeable. (*See* Patek Decl., Ex. A (attaching copy of *Miller*

2   *v. Peter Thomas Roth, LLC*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854, at *5-6 and *8-

3   9 (N.D. Cal. Jan. 22, 2020) (order denying summary judgment based on scientific publications and

4   tests submitted by Plaintiffs' expert Michael Pirrung, Ph.D.))

5      This same evidence proves that B&BW's "1,000x" its weight in water marketing claim is

6   false as well. And because that claim is false, Defendants' claims that this mechanism makes skin

7   "smoother and more supple" and is "clinically tested to instantly lock in moisture" are also

8   necessarily false. (*Id.*) Similarly, hyaluronic acid is an exceptionally large molecule that cannot

9   penetrate the surface of a user's skin. As such, the claim that it is a "fast-absorbing formula" is also

10   false, because it claims that the hyaluronic acid is absorbed into skin and then attracts and retains

11   1,000 times its weight in water within the skin. In sum, all of Defendants' representations about

12   hyaluronic acid—which B&BW uses as a brand name for its "Hyaluronic Acid" Products—are

13   false.

14      **C.**    **In a CLRA Notice Letter, Plaintiffs Informed B&BW of Unequivocal**
             **Evidence that the "1,000x" Claim Was False.**

15      As noted in the Complaint, Plaintiffs gave Defendants notice that B&BW hyaluronic acid

16   claims were false and misleading. (FAC, ¶¶ 57 & 96.) In that notice, which is incorporated into the

17   FAC by reference and quotes Judge Alsup's judicially noticeable statements in the PTR lawsuit,

18   Plaintiffs identified evidence that PTR's claims were false and deceptive. (Patek Decl., ¶¶ 5-6 and

19   Ex. B.)

20      Specifically, Plaintiffs' CLRA letter to Defendants stated:

21

22          As you may or may not be aware, Plaintiff's counsel recently
          litigated a lawsuit directed to nearly identical claims, *Miller v. Peter*

23          *Thomas Roth Labs, LLC*, No. 3:18-cv-00698-WHA. At a recent
          hearing on Peter Thomas Roth's ("PTR's") motion for summary

24          judgment on this issue, Judge Alsup rejected the exact story that
          Defendants are selling, calling it "bologna" and "totally fraudulent."

25          The Court further stated that "I can't imagine that you thought that
          was an honest statement." When he made these statements, Judge

26          Alsup had before him several of the publications that PTR had cited
          as proof of the claim's veracity, and he did not find them vaguely

27          persuasive. Judge Alsup told PTR's counsel point-blank that he was
          going to require them to replicate the claim that hyaluronic acid

28          absorbs 1,000 times its weight in water in the courtroom before he

would believe it:

> THE COURT [Judge Alsup]: So I'm looking forward at trial to the following experiment in the presence of the jury: You will have Beaker Number One with a certain number of weight of this product and Beaker Number Two will be 1,000 times that weight of water. And we are going to mix them together and see if it absorbs it.
>
> . . .
>
> THE COURT [Judge Alsup]: You will mix them together and we will sit here in stony silence so the jury can see how long does it take. Let's say we sit here for three hours and nothing happens, it is still water. That's what is going to happen in my opinion. I think I do know enough about chemistry to tell you that.

(Patek Decl., Ex. B at 2.)

The CLRA letter further noted that Plaintiffs' attorneys had obtained independent testing confirming the claims are false:

> This firm has consulted a professor of Chemistry who is on the faculty of the University of California, and whose research focuses on Biological Chemistry. The professor agreed with the conclusions that are set forth in this letter, has confirmed them via tests, and is willing to testify that the representations B&B makes about its products are false and without any scientific basis.

(*Id.* at 2-3; see also FAC, ¶ 96.)

The "tests" to which the CLRA letter referred include the experiment requested by Judge Alsup, which the plaintiffs in that case had submitted to Judge Alsup. (Patek Decl., ¶ 6.) The defendant in that case, Peter Thomas Roth, did not do that test. (*Id.*) Needless to say, the tests proved the claim false. (*Id.*). This evidence is in the public docket for the *PTR* litigation. B&BW's argument that judicial notice of the *PTR* complaint is warranted also supports judicial notice of the order Judge Alsup issued denying PTR's motion for summary judgment, and the record evidence in that case indicating that the claim hyaluronic acid "attracts and retains up to 1,000x its weight in water" is false.

Even if the Court is unable to consider all of the details above with respect to this motion to dismiss, Plaintiffs submit them for consideration in addressing leave to amend, and to the extent they rebut Defendants' inflammatory suggestion (ECF 57 at pp. 1 and 6-8) that Plaintiffs filed this

1  suit without doing testing to support their claims.

2        **D.    Defendants Continue Their Fraud Despite Knowing the Claims Are False.**

3       As the party that formulated and manufactured the Products, Defendants had to know the

4  claims were false. (FAC, ¶ 45.) If the claims were true, Defendants would have seen evidence of

5  incredible water absorption while formulating the products. (*Id.*) And if the claims were false,

6  Defendants necessarily saw evidence contradicting their claims. (*Id.*) For example, if the "1,000x"

7  claim were true, hyaluronic acid exposed to air would have expanded in size by 1,000 times as it

8  "attracted and retained 1,000x its weigh in water." (*Id.*) That necessarily did not happen, because,

9  as discussed above, hyaluronic acid does not have any particular ability to attract or retain water.

10  (*Id.*, ¶¶ 33-38.) And because Defendants were working with hyaluronic acid, they definitely

11  witnessed that failure. (*Id.*, ¶ 45.) Similarly, if the hyaluronic acid in the Products was not fully

12  saturated and the "1,000x" claim were true, the hyaluronic acid would "attract and retain" water

13  from the air, causing the Products to overflow their containers. Again, this does not happen. As the

14  ones making and selling the Products, Defendants witnessed the actual behavior of hyaluronic acid,

15  and therefore necessarily saw evidence their advertising claims were false.

16       Even if Defendants were originally unaware that the challenged claims are false, they knew

17  once they received Plaintiff Brooks' CLRA letter, which referred them to evidence submitted in

18  the *PTR* litigation. Despite this knowledge, Defendants continue to sell the products using the false

19  and misleading advertising. Defendants' conduct is therefore not only intentional, but done with

20  malice.

21        **III.    LEGAL STANDARD**

22

23       To survive a motion to dismiss, a plaintiff's complaint need only contain "enough facts to

24  state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544,

25  570 (2007). A claim is plausible when it "allows the court to draw the reasonable inference that the

26  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

27  evaluating plausibility, "the court must presume all factual allegations are true and draw all

28

1   reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d

2   1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678).

3        "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited

4   to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *accord Van*

5   *Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may

6   look only at the face of the complaint to decide a motion to dismiss."). Courts may also, however,

7   consider "attached exhibits, documents incorporated by reference, and matters properly subject to

8   judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014), *cert. denied*

9   *sub nom. Cohen v. Nvidia Corp.*, 135 S. Ct. 2349, 192 L. Ed. 2d 143 (2015).

10  **IV.    ARGUMENT**

11      **A.    The Court Should Judicially Notice the *PTR* Order Denying Summary**
12          **Judgment On CLaims Substantially Identical to those here, and the Evidence**
              **of Falsity in *PTR***

13          Plaintiffs request that the Court take judicial notice of the proceedings in *Miller v. Peter*

14  *Thomas Roth, LLC ("PTR")*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854 (N.D. Cal. Jan.

15  22, 2020), which involved false claims essentially identical to those at issue in this case. In *PTR*,

16  the false claim at issue was that "hyaluronic acid is capable of attracting and retaining 1,000 times

17  its weight in water from the air"; B&BW's false claim that "Hyaluronic Acid attracts and retains

18  1,000x its weight in water" is an almost verbatim repetition of PTR's false advertising claim

19  (collectively, the "1,000x claim"). Plaintiffs ask the Court to take judicial notice of the entirety of

20  the *PTR* proceeding, including: Judge Alsup's denial of a motion by Defendant Peter Thomas Roth

21  for summary judgment on the falsity of the 1,000x claim; the evidence submitted by the plaintiff in

22  that case on hyaluronic acid's inability to attract and retain 1,000 times its weight in water (from

23  the air or liquid water), which included independent testing by Dr. Michael Pirrung; and—more

24  specifically—the failure of PTR to perform the one simple test that Judge Alsup said would be

25  necessary to prove the claim was true: simply pouring one liter of water over one gram of hyaluronic

26  acid and showing that the hyaluronic acid absorbed and retained the liter of water. *See Miller v.*

27

28

*Peter Thomas Roth, LLC*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854, at \*5-6 and \*8-9 (N.D. Cal. Jan. 22, 2020) (order denying defendant's motion for partial summary judgment that claim hyaluronic acid is "capable of attracting and retaining up to 1,000 times its weight in water" is true). The *PTR* court held that "Plaintiffs also provide sufficient evidence to create a genuine dispute as to the deceptiveness of PTR Labs' claim that hyaluronic acid absorbs up to one thousand times its weight in water," citing plaintiff's submission of peer-reviewed publications. *Id.*; see also *Miller v. Peter Thomas Roth*, Case No. 3:19-cv-00698-WHA (N.D. Cal. 2019), Dkt. No. 118 and attached exhibits (identifying evidence that the "1,000 times" claim is false). Defendants previously asked the Court to judicially notice the Complaint from the *Peter Thomas Roth* case (ECF 20 at 6), and have thus admitted that it is proper to judicially notice the PTR proceedings.

### B.    Plaintiffs Adequately Plead False and Deceptive Advertising Claims

#### 1.    CLRA  (Count 1), FAL (Count 2) and UCL (Count 5)

The Complaint alleges that Defendants sell the Hyaluronic Acid Products using a false claim that the hyaluronic acid in them attracts and retains 1,000x its weight in water. Under the CLRA, it is illegal to sell any product by misrepresenting its benefits, characteristics, or qualities, or selling any good or service with an intent not to sell the product as advertised. *See* California Civil Code, ¶¶ 1770(a)(5), -(7), and -(9). Since the hyaluronic acid in the Products Defendants sell is not capable of attracting or retaining more than a fraction of its weight in water, Defendants are selling a product that cannot (and does not) deliver, as represented, and that does not have the qualities or characteristics they advertise. That violates the CLRA.

These same allegations establish false advertising. As Defendants admit, a complaint adequately pleads a claim for false advertising if it alleges a statement by a defendant that is false *or* deceptive. As established above, the Complaint adequately alleges that the "1,000x its weight in water" claim is literally false. That, combined with the allegations Plaintiffs initially believed them and other reasonable consumers are likely to be deceived, are sufficient to establish deceptiveness for purposes of a motion to dismiss.

1   The allegations also support UCL claims under all three prongs of the UCL. The violations

2   of the CLRA and FAL establish violation of the UCL's unlawful prong. The violation of those

3   law's policies establish an unfairness claim under the UCL. And the knowing false advertisement

4   establishes violation of the UCL's fraud prong.

5   a.   Plaintiffs Have Substantiated that the Claims Are False.

6   Defendant contends that Plaintiffs state only "a non-actionable lack of substantiation

7   claim." (ECF 57 at 10.) This completely mischaracterizes Plaintiff's claims. A "lack of

8   substantiation" claim arises when a product makes a claim about its efficacy, and the Plaintiff

9   contends it is misleading because *the defendant did not have evidence to prove the advertised*

10   *benefit before making the claim*. *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 U.S. Dist.

11   LEXIS 205494, at *12-15 (N.D. Cal. Oct. 25, 2021). By contrast, "plaintiffs may, without resorting

12   to any impermissible substantiation argument," establish "[t]he falsity of [ ] advertising claims . . .

13   by testing, scientific literature, or anecdotal evidence." *Forcellati v. Hyland's, Inc.,* No. CV 12-

14   1983-GHK (MRWx), 2015 U.S. Dist. LEXIS 3867, at *14 (C.D. Cal. Jan. 12, 2015) (quoting *Nat'l*

15   *Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1348 (2003));

16   *see also Melgar v. Zicam*, No. 2:14-cv-00160-MCE, 2016 U.S. Dist. Lexis 43990 (C.D. Cal. Mar.

17   30, 2016) (same).

18   Plaintiffs are not proceeding on a "lack of substantiation" theory; they have affirmative

19   evidence demonstrating that Defendants' hyaluronic acid claims are false. Plaintiffs have gathered

20   ample affirmative scientific evidence that hyaluronic acid does not attract or retain 1,000 times its

21   weight in water (whether from the air or liquid it comes in contact with), including multiple studies

22   establishing hyaluronic acid actually attracts and retains a fraction of its weight in water. The FAC

23   identified eight such studies, which is sufficient to establish the plausibility of Plaintiffs' claims.

24   Further, Plaintiffs' counsel retained Dr. Michael Pirrung, a professor of chemistry at

25   University of California-Riverside, who not only identified the above publications, but also

26   performed his own measurements of hyaluronic acid's ability to attract and retain water,

27   demonstrating that hyaluronic acid with a weight of approximately 900,000 Daltons absorbs only

28   a fraction of its weight (approximately 14%, total) after 70 hours exposed to the air. (FAC at 96;

- 9 -

1  Patek Decl., ¶¶ 2-7 and Ex. A.)  (*Id*.) While the FAC does not cite Dr. Pirrung's expert testing in

2  detail, it does disclose its existence and plead that it proves the falsity of Defendants' claim.  Dr.

3  Pirrung's testimony is also judicially noticeable as part of the PTR litigation.  Plaintiffs expect to

4  submit testimony from Dr. Pirrung in this case when expert discovery occurs. As noted above, this

5  evidence survived a motion for summary judgment in *PTR*.

6        Defendants are fully aware that Plaintiffs performed testing to back up the Complaint's

7  allegations. As the FAC notes, Plaintiffs sent Defendants a pre-filing CLRA notice. (FAC, ¶ 57).

8  The FAC alleges that the CLRA letter included notification of both the studies cited in the FAC

9  and "tests performed in conjunction with another lawsuit demonstrating that the claim hyaluronic

10  acid attracts and retains 1,000 times its weight in water is false" (i.e., the PTR litigation). (*Id*., ¶ 96.)

11  Indeed, B&W admits in its motion to dismiss that the FAC identifies the prior testing Plaintiffs'

12  counsel did. (See ECF 57 at 14, citing FAC ¶ 57 & 96). Moreover, the parties had a lengthy pre-

13  suit negotiation, including a full day mediation. Patek Decl., ¶ 7. Defendants' prior request for

14  judicial notice of the *PTR* Complaint (see ECF 20 at 6) further confirms their knowledge of the

15  evidence presented in the *PTR* litigation. Thus, Defendants were aware that Plaintiffs possess ample

16  evidence—including both publications and testing—that the claim hyaluronic acid "attracts and

17  retains up to 1,000x its weight in water" is false.

18        Knowing that Plaintiffs have affirmative evidence that the 1,000x claim is false, B&W

19  bases its motion on a semantic distinction, accusing Plaintiffs of failing to test "BBW's products or

20  any other cosmetic product." That disingenuous argument glosses over the fact that B&W's false

21  advertising claim—that "*hyaluronic acid* attracts and retains 1,000x its weight in water"—involves

22  the putative active ingredient of B&W's products. Plaintiffs tested hyaluronic acid's ability to

23  attract and retain water, and found it is nowhere near 1,000x the hyaluronic acid's weight. Since

24  Plaintiffs have shown that the claim B&W used to sell its product is false, they need not separately

25  test claims B&W did not make (e.g., whether B&W's moisturizer is capable of attracting or

26  retaining 1,000 times its weight in water). To the extent Defendants argue that Plaintiffs' testing is

27  insufficient because it did not involve "formulations or dosages comparable to the type of

28

1   hyaluronic acid used in B&BW's Hydrating Body Cream," those are questions of fact requiring

2   expert testimony, and are not appropriate for a motion on the pleadings.

3          Defendants also mischaracterize some the FAC's allegations as an admission Plaintiffs did

4   no testing. *See* ECF 57 at 7. Reading the allegations in context proves otherwise. Specifically,

5   Plaintiffs alleged that they "***will be*** unable to determine if representations that Defendants make

6   regarding the properties and features of its products are true" without "purchasing and having the

7   products professionally tested," and are thus "***likely to be repeatedly misled*** by Defendants'

8   conduct." (FAC at ¶¶ 42, 48 & 51 (emphasis added).) These are not admissions of past conduct;

9   they are forward-looking allegations explaining why an injunction to prevent *future* false

10  advertising is appropriate.

11         The remaining arguments B&BW makes fare no better.  Defendants argue that the FAC

12  contains no evidence of falsehood because it did not attach the publications and studies it cites.

13  (see ECF 57 at 8 (referring to the studies cited in the FAC as "mere window-dressing")). But there

14  is no such requirement under the Federal Rules of Civil Procedure's notice pleading standard, and

15  the cases that B&BW cites are simply inapposite.  In *Tubbs v. AdvoCare Int'l, LP ("Tubbs I")*, No.

16  CV 17-4454 PSG (AJWx), 2017 U.S. Dist. LEXIS 147681, at *19-21 (C.D. Cal. Sep. 12, 2017),

17  the complaint alleged only that a few studies "strongly questioned" an active ingredient's benefits,

18  which did not establish falsehood. And when the *Tubbs* court examined the studies cited in that

19  complaint, it found that the studies themselves identified only a lack of substantiation for the

20  benefits of energy drinks, not falsity. See, e.g., *id.* at * 19 ("The Nutrition Reviews piece suggests

21  that there is a 'lack of evidence to substantiate claims that components of [energy drinks], other

22  than caffeine, contribute to the enhancement of physical or cognitive performance.' However, not

23  only does this article indicate only a lack of substantiation and not outright falsity, it does not

24  mention Defendant, Spark, or any other 24-Day Challenge product."); *see also Tubbs v. AdvoCare

25  Int'l, LP ("Tubbs II")*, No. CV 17-4454 PSG (AJWx), 2017 U.S. Dist. LEXIS 235692, at *10-11

26  (C.D. Cal. Dec. 12, 2017) (referencing *Tubbs I* and noting that offered articles "intimate only lack

27  of substantiation").  In contrast, the FAC alleges that eight published studies (plus independent

28

1    testing by Plaintiffs' counsel) have produced measurements directly contradicting the claim made

2    by B&BW that hyaluronic acid attracts and retains 1,000x its weight in water.

3         Unlike *Tubbs*, the studies cited here are unequivocal. They report hyaluronic acid's

4    objective ability to attract and retain water as 0.36x to 0.86x its weight, which is at least three orders

5    of magnitude less than B&BW's claimed ability of hyaluronic acid to attract and retain 1,000x its

6    weight in water. To the extent *Tubbs II* involved a refusal to consider evidence not attached to the

7    complaint, the court was addressing an expert report not incorporated into the complaint, not the

8    publications cited in the complaint (which the Tubbs court *did* consider). So B&BW is simply

9    wrong when it cites *Tubbs II* for the proposition that publications must be attached to the Complaint

10   to be considered in a motion to dismiss. Nor does *Tubbs II* support ignoring Dr. Pirrung's testimony,

11   since, unlike the testimony the *Tubbs II* plaintiff failed to attach, Dr. Pirrung's testing is both pled

12   in the FAC and judicially noticeable as part of the PTR litigation.

13        A similar distinction applies to *Aloudi v. Intramedic Rsch. Grp. LLC*, 729 F. App'x 514,

14   516 (9th Cir. 2017).  There, the issue was not whether Plaintiff was pursuing a lack of substantiation

15   claim, but whether the complaint established a falsehood given that none of the studies cited

16   involved the "same active ingredient" as the defendant's product. Unlike *Aloudi*, this is not a case

17   of a mismatch between the ingredient tested and the ingredient in the accused product that is

18   apparent on the pleadings. All of the studies the FAC cites involve the exact same active ingredient

19   B&BW touts: hyaluronic acid. Even if B&BW uses a slightly different formulation than those

20   addressed in the studies in the FAC (e.g., using a different average molecular wight of hyaluronic

21   acid, since is a polymer made up of varying lengths of a repeating subunit), the FAC still establishes

22   a plausible basis for alleging that the 1,000x claim is false, because it shows that each subunit would

23   have to bind an impossible number of water molecules (22,389, compared to the 12-14 that are

24   actually possible), which applies to hyaluronic acid of any length. (Furthermore, while not pled in

25   the FAC, the studies involved differing lengths of hyaluronic acid, yet all showed consistent results

26   well below the 1,000x ability claimed by B&BW. If necessary, Plaintiffs could easily add

27   allegations establishing that modifying the formulation of hyaluronic acid does not affect its ability

28   to attract water enough to produce the 2000-fold increase required to make B&BW's claim true.).

B&BW falsely asserts—without any support or explanation—that "even a cursory review of the cited studies expose the fact that they have no bearing on this case." That assertion is extraordinary given that a subset of these studies defeated a motion for summary judgment in the *PTR* litigation, where they were the subject of extensive briefing and expert testimony. *Compare Miller v. Peter Thomas Roth*, LLC, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854, at *9 (N.D. Cal. Jan. 22, 2020) (denying defendant's motion for summary judgement, finding expert testimony established a triable fact because the "outlandish" claim hyaluronic acid can attract and retain 1,000 times its weight in water is contradicted by studies cited by Davies, Jouon, Mlčoch, and Haxaire) with FAC at ¶ 36 (citing those same studies, plus four more). B&BW provides no explanation why Judge Alsup was wrong when he held that these "*peer reviewed and published findings* of four other sets of researchers" (emphasis in original) established a triable fact whether the 1,000x claim was false. *See id.* ("Again, plaintiffs present the jury question described in [*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)] — a reasonable consumer, based on the ad, could expect that hyaluronic acid can attract and retain one thousand times its weight in water, but, in truth, hyaluronic acid retains only about half its weight in water, a divergence off by a factor of up to two thousand.").

As discussed above, the FAC cites affirmative evidence that B&BW's marketing claims are false. In the event the Court deems the allegations of the Complaint insufficient to support the allegations of falsehood and deceptiveness, Plaintiffs can plead additional facts to support them, including more detail regarding the publications showing hyaluronic acid attracts and retains only a fraction of its weight in water, and more detail regarding the testing done by Plaintiffs' expert Dr. Michael Pirrung showing the same.

        b.     <u>Plaintiffs Have Adequately Pled False and Deceptive Statements.</u>

Defendants further argue that the Complaint alleges only a false statement, without supplying evidence that the statement, if not literally false, is also "misleading." But there is no requirement to supply distinct evidence that a false statement is also misleading. *See True v. Am. Honda Motor Co*., 520 F. Supp. 2d 1175, 1182-83 (C.D. Cal. 2007) (holding under the CLRA, as well as the UCL and FAL, a plaintiff satisfies the reliance element with an allegation that *a false*

1    *or deceptive* advertisement induced the plaintiff to alter his position to his detriment.) (emphasis

2    supplied.)

3         Even if there were such a requirement to plead deception separately from falsity, the

4    allegations are more than sufficient. First of all, the FAC introduces all evidence discussed in the

5    FAC as evidence that B&BW's claims are "false *and* misleading" (FAC, heading "A" and ¶ 21),

6    so B&BW is simply wrong when it implies that the Plaintiffs have focused on falsity to the

7    exclusion of "misleading." (ECF 57 at 11.) The FAC alleges that hydration is a highly material

8    factor in purchasing skin care products (FAC, ¶¶ 34-37); that allegation is plausible, and must be

9    taken as true at this stage. The FAC alleges that the "1,000 times" claim is false; that alone

10   establishes that it is also "deceptive." *See Factory Direct Wholesale, LLC v. Itouchless Housewares

11   & Prods.*, 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019) ("[W]here a statement is literally false . . . ,

12   actual deception is presumed.") The FAC also establishes that the related claims about hyaluronic

13   acid's role in hydration and being "clinically tested to lock in moisture" are, even if not false, at

14   least misleading, because hyaluronic acid could not have produced the results that Defendants'

15   claim. (FAC, ¶¶ 31-33.)

16        Contrary to Defendants' motion, survey evidence is not required at the pleading stage. *See

17   Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019) ("While [the

18   plaintiff] has not yet produced actual evidence of these consumer beliefs, at the motion to dismiss

19   stage, the Court can accept allegations of such facts as sufficient."). And even if it were, the

20   plaintiffs in *PTR* submitted survey evidence establishing both materiality and likelihood of

21   deception for a similar moisturizing product's label claim that hyaluronic acid was "capable of

22   attracting and retaining up to 1,000 times its weight in water." *See Miller v. Peter Thomas Roth,

23   LLC*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 51898, at *9 (N.D. Cal. Mar. 24, 2020) (noting

24   survey evidence that California consumers believe the claim hyaluronic acid is "capable of

25   attracting and retaining up to 1,000 times its weight in water"). Patek Decl., ¶ 9 (citing *Miller v.

26   Peter Thomas Roth*, Case No. 3:19-cv-00698-WHA (N.D. Cal. 2019), Dkt. No. 118-7 and 118-8).

27   Because that case involved a nearly identical advertising claim to the one at issue here—that

28

1    hyaluronic acid "attracts and retains up to 1,000x its weight in water"—the *PTR* survey is *prima*

2    *facie* evidence that Defendants' "1,000x" claim is also material and deceptive.

3        None of the cases B&BW cites require the Court to dismiss the FAC for failure to include

4    survey evidence in the pleadings. In general, each of those cases alleged that consumers would

5    assume facts that were facially questionable or involved inferences that were not self-evident.  See,

6    e.g., *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 2172833, at *2 (N.D. Cal. Mar.

7    24, 2021) (dismissing claim that McDonald's description of its vanilla-flavored ice cream was

8    misleading, because "vanilla" accurately described the flavor); *Vallarta v. United Airlines*, 497 F.

9    Supp. 3d 790, 809 (N.D. Cal. 2020) (dismissing claim asserting a reasonable consumer would

10   assume that the airline did not get a commission on third party insurance sold through its web site);

11   *Cullen v. Netflix, Inc.*, No. 5:11-cv-01199-EJD, 2013 WL 140103, at *8-9 (N.D. Cal. Jan. 10, 2013),

12   aff'd, 600 F. App'x 508 (9th Cir. 2015) (dismissing claim based on unsupported assertion that

13   phrase "of viewing" was synonymous with "viewing coverage");  *Hawyuan Yu,* 2020 WL 5910071,

14   at *9 (Freeman, J.) (dismissing claim based on assumption that "all natural" implied product was

15   free of pesticides, finding that this was both implausible and preempted by federal regulations);

16   *Prescott v. Nestle USA, Inc.*, No. 19-cv-07471, 2020 WL 3035798, at *5-6 (N.D. Cal. June 4, 2020)

17   (Freeman, J.) (holding a reasonable consumer would not assume "white" meant "white chocolate");

18   *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8 (N.D. Cal. 2020) (same).

19       Unlike those cases, all that Plaintiffs here must prove to establish deception is that

20   consumers took B&BW's marketing claims at face value. Again, the primary false claim B&BW

21   made is that "Hyaluronic Acid attracts and retains 1,000x its weight in water." To tie this back to

22   the cases Defendants cite, such as *Prescott* and *Cheslow*, this is like alleging that consumers

23   understood "white" to mean "white."  If, in fact, the chips *Cheslow* and *Prescott* had been brown,

24   blue, or red, the plaintiffs in those cases would have pled valid claims for false advertising, whether

25   or not the plaintiffs included survey evidence that consumers were misled. The same reasoning

26   applies here. Plaintiffs are not asking the Court to assume that consumers would make questionable

27   inferences from the 1,000x claim; they allege only that consumers took this claim to be literally

28   true, which it was not.

Defendant is incorrect when it argues the alleged false claims are immaterial because they were made on the back panel of the products. First, this argument ignores other avenues by which B&BW touted this false claim. The FAC alleges that B&BW promoted these false claims in its stores by training personnel to make the same false claim to in-person shoppers. (FAC, ¶ 25.) It also alleges that B&BW prominently displayed the Products' back panels in photos on its web site, and repeated the false claims in the descriptions of the Products online. (*Id.*, ¶¶ 26-28.) So it is not true that shoppers who picked up the product and viewed the back panel were the only ones exposed to the false claim; B&BW promoted this claim to in-person and online shoppers via other means as well. Nor does *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1174 (2019), stand for the proposition that companies can immunize themselves from false advertising lawsuits by placing false claims on the back labels; in *Brady*, the issue was that the defendant placed a deceptive "one-a-day" statement on the front of its label, and then instructed consumers on the back label to take two pills a day. The statement quoted by B&BW (that consumers cannot be assumed to be "back-label scrutinizers") confirms only that business cannot use back-label qualifications to cure front-label falsehoods, not that back-label statements cannot be material or deceptive. Other cases make clear that back-label statements can support claims for false advertising. *See, e.g., Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 U.S. Dist. LEXIS 135351, at *23 (C.D. Cal. Mar. 24, 2017) (discussing false advertising claim based on instructions on back label); *see also Davis v. Hain Celestial Group*, 297 F. Supp. 3d 327, 332 (E.D.N.Y. 2018) (denying motion to dismiss claim for false advertising based on back label statements juice was cold-pressed).

### c. The Claims Are Not Puffery.

Defendants also argue erroneously that "many" of the claims at issue are puffery, which is untrue. The claim that hyaluronic acid in the Products "attracts and retains up to 1,000 times its weight in water" is quantifiable and testable; not even Defendants argue it is puffery. The other claims are also provably false, because they are all contingent on the "1,000 times its weight in water" claim. For instance, Defendants do not claim merely that the Product makes skin look smooth and supple, they specifically claim that "hyaluronic acid attracts and retains up to 1,000 times its weight in water to make skin look smoother and more supple." That claim involves a

specific mechanism of action, which the Complaint alleges is both testable and false. *See Miller v. Peter Thomas Roth, LLC*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854, at *5-6 (N.D. Cal. Jan. 22, 2020) ("A jury could find that, based on the ad [stating hyaluronic acid in the product] attracts and retains one thousand times its weight in water from moisture in the atmosphere], reasonable consumers would expect that hyaluronic acid absorbs and retains about one thousand times its weight in water"). Defendants' claims that the hyaluronic acid formula is "clinically tested to instantly lock in moisture" and "fast-absorbing" are also objective, measurable claims, and not puffery. Further, both are false and deceptive due to hyaluronic acid's inability to "lock in" moisture at all, and its extremely large molecular size, which hinders and prevents its absorption.

Defendants' only other basis for moving to dismiss the CLRA, FAL, and UCL claims is their assertion that the claims "sound in fraud" and thus must meet the requirements of Federal Rule of Civil Procedure Rule (9)(b). As discussed below, the Complaint, easily meets the standard of Rule 9(b).

## 2.     Fraud (Count 3)

"The elements which must be pleaded to plead a fraud claim are (a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Philipson & Simon v. Gulsvig*, 154 Cal. App. 4th 347, 363 (2007) (quotations omitted). Defendants argue the first four elements are missing; they do not contest the Complaint's allegations of damages. The existence of a misrepresentation has been established above. The only additional elements required are knowledge of falsity, intent, and justifiable reliance. The Complaint alleges these as well.

### a.     Knowledge

Plaintiffs adequately plead that Defendants knew or should have known that the claim was false even before they started making it. The Complaint alleges that Defendants, as the ones formulating and manufacturing the Products, knew the claims were false because they "are fully aware of the properties and actual capabilities of those ingredients." (FAC, ¶ 84.) In other words, the Complaint alleges that hyaluronic acid does not behave as Defendants' claim, and that they necessarily witnessed that failure in manufacturing the product. (*Id.*, ¶ 33.) That suffices to establish

1    actual knowledge of falsehood.

2        In considering the sufficiency of the Complaint, it must be noted that the claimed properties

3    would be impossible to miss if they were true or false. The claim requires that an entire liter of

4    water (which is defined as the volume of 1,000 grams of water) could be absorbed and retained by

5    material $1/1000^{th}$ of its mass (1 gram). Thus, hyaluronic acid exposed to water or air would expand

6    in size by 1,000 times. That does not happen. It would also pull water out of a user's skin (FAC,

7    ¶ 31), which does not happen. Anyone at B&W who worked with hyaluronic acid necessarily saw

8    that these things did not happen. Certainly, if Defendants had actually performed clinical testing,

9    as claimed and represented, they would have seen that hyaluronic acid does not produce hydration

10   consistent with an ability to attract and retain 1,000x its weight in water. (*Id.*, ¶ 39.) In sum, the

11   Complaint alleges facts sufficient to establish that Defendants knew the challenged claims are false,

12   yet continued to make them.

13       Furthermore, there are numerous scientific publications, cited above, indicating that the

14   "1,000x" claim is bogus. A diligent search by Defendants would have uncovered this evidence. So,

15   depending on how diligently Defendants researched their claim, Defendants knew or should have

16   known the claim is false.

17                    b.    Intent

18       Defendants' intent to defraud consumers is also reasonably inferred from the allegations

19   that they knew it was false, yet continued to make it, hoping to profit from consumer's desire for

20   highly hydrating skin products. (FAC at ¶¶ 15-29; 43-58.) They intentionally included the false

21   statements on the Products' packaging, labels, and advertising, including their own web site. (*Id.*)

22       At minimum, Defendants knew the claims were false once they received Plaintiff Brooks'

23   CLRA letter. (*Id.*, ¶ 57.) That letter informed Defendants they had violated the CLRA and UCL,

24   and that multiple studies, including testing in the *PTR* litigation, showed that B&W's 1,000 times

25   claim was false. (*Id.*, ¶¶ 40, 57 & 96.) It also notified Defendants of the *PTR* litigation and Judge

26   Alsup's opinion that there was ample evidence that a materially identical that claim that hyaluronic

27   acid "attracts and retains up to 1,000 times its weight in water" was false. Patek Decl., Ex. B.

28   Accordingly, even if the Complaint does not establish Defendants' knowledge *prior* to the CLRA

1    notice, it establishes Defendants' knowledge once they received the CLRA notice.

2                            c.      Justifiable Reliance

3            With respect to justifiable reliance, Defendants argue only that Plaintiffs have made "vague

4    and conclusory" allegations that they reasonably relied on the labels' representations. Untrue. The

5    Complaint provides detailed allegations establishing Plaintiffs' desire for hydrating skin care

6    products, the statement of the challenged claims on the Products' labels as proven facts, and

7    Plaintiffs' inability as laypersons to determine whether or not the claims were true. That is enough

8    to establish reasonable reliance at the pleading stage. "As our court of appeals explained in *Gerber*,

9    reasonable consumers are not 'expected to look beyond misleading representations on the front of

10   the box to discover the truth . . . .'" *See Miller*, 2020 U.S. Dist. LEXIS 10854, at *5-6 (denying

11   motion for summary judgment, holding plaintiffs might reasonably rely on label's statement that

12   hyaluronic acid was "capable of attracting and retaining up to 1,000 times its weight in water"),

13   (*citing Williams v. Gerber Prods.*, 552 F.3d 934, 939 (9th Cir. 2008)

14                   **3.     Negligent Misrepresentation (Count 4)**

15           The same allegations discussed above establish a claim for negligent misrepresentation. To

16   summarize, the FAC alleges fraudulent inducement to enter into a contract. It pleads that

17   Defendants were aware that hyaluronic acid was not capable of attracting or retaining 1,000 times

18   its weight in water, and that Defendants' mechanism and efficacy claims based on the "1,000 times"

19   claim were false as well. (FAC, ¶¶ 43-46.) It alleges that Defendants were aware that their

20   statements concerned material facts Plaintiffs and other consumers relied upon. (*Id*., ¶¶ 15-19; 43-

21   46. ) The FAC also pleads that Plaintiffs relied on Defendants' representations. (*Id*., ¶¶ 47, 49, 54-

22   55, and 111.)

23           Defendants' arguments for dismissal of Plaintiffs' negligent misrepresentation claims are

24   largely identical to those discussed above with respect to fraud (e.g., that Plaintiffs have not

25   established intent), and are wrong for the same reasons. Defendants additionally argue that Ms.

26   Brooks' CLRA letter "does not serve as appropriate evidence of knowledge and intent to defraud,"

27   because the goal of CLRA letters is to facilitate settlement prior to filing of a complaint, not serve

28   as substantive evidence of knowledge. (ECF 57 at 14.) Granting that CLRA letters are intended to

1    facilitate pre-litigation cure and settlement, B&BW provides no explanation why allowing

2    defendants to ignore notice of false advertising serves that goal, nor any reason why using a CLRA

3    letter as evidence of knowledge conflicts with that goal. Nor does *Arechiga v. Ford Motor Co.*, No.

4    17-01915, 2018 WL 5904415, at *2 (C.D. Cal. Sept. 10, 2018), support B&BW's argument; that

5    case did not even discuss whether a CLRA letter can establish a defendant's knowledge or intent.

6    In practice, treating CLRA letters as *prima facie* evidence that a defendant knows a claim is false

7    should foster the pre-litigation cure and settlement, by forcing defendants to take such allegations

8    seriously or face increased risk if they ignore them. The simple fact is that B&BW knew or should

9    have known that its 1,000x claim was false well before it received Brooks' CLRA letter, but

10   certainly had  reason to know the claim was false once it did receive the letter. Allowing B&BW

11   to evade liability for ignoring that letter would undermine the CLRA's goals.

### 4.    Unjust Enrichment (Count 6)

13   Defendants' only argument with respect to unjust enrichment is that Plaintiffs failed to plead

14   conferral of a benefit through "mistake, fraud, coercion, or request." But as noted above, the

15   Complaint pleads fraud, and incorporates those allegations into the claim for unjust enrichment.

16   Accordingly, because the Court should deny Defendants' motion with respect to Plaintiffs' fraud

17   claim (count 3), it must also deny the motion with respect to unjust enrichment.

### C.    Plaintiffs Correctly Plead Equitable Relief in the Alternative

19   Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more

20   statements of a claim or defense alternatively or hypothetically, either in a single count or defense

21   or in separate ones." Rule 8(d)(3) explicitly allows Parties to plead inconsistent claims. These

22   rules allow Plaintiffs to plead claims for injunctive relief in the alternative, as they have done.

23   *See, e.g., Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2017 U.S. Dist. LEXIS 137881, at *7

24   (N.D. Cal. Aug. 1, 2017) (noting "no basis in California or federal law for prohibiting the

25   plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings

26   stage."); *see also Vicuña v. Alexia Foods, Inc*., No. C 11-6119 PJH, 2012 U.S. Dist. LEXIS

27   59408, at *8 (N.D. Cal. Apr. 27, 2012) ("[W]hile a claim for restitution is inconsistent and

28   incompatible with a related claim for breach of contract or a claim in tort, at the pleading stage, a

1  plaintiff is allowed to assert inconsistent theories of recovery."); *Oki Am., Inc. v. Microtech Int'l,*

2  *Inc.*, 872 F.2d 312, 314 (9th Cir. 1989) (inconsistent pleading is permissible under Fed. R. Civ. P.

3  8(d)(2)[1]); *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 879 n.2 (N.D. Cal. 2019)

4  ("[Q]uestions about the appropriateness of specific remedies are premature at [the pleading] stage

5  of the litigation."). Plaintiffs specifically allege that they and the general public have "no other

6  adequate remedy at law" to prevent the future harm of continued false advertising and thus need

7  injunctive relief. (FAC, ¶¶ 68, 80, and 109.) Plaintiffs also plead equitable causes of action for

8  restitution, based on the possibility they will not be able to recover damages at law. (*Id.*)

9       Defendants' citation of *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020),

10  is inapposite. *Sonner* addressed standing for equitable relief on the eve of trial, when the plaintiffs

11  voluntarily dismissed their only legal claim to secure a bench trial of their equitable claim. *Id.* at

12  837-38. Because *Sonner* was well past the pleadings stage, Rule 8 no longer applied, and the

13  plaintiffs could no longer plead their equitable claim as an alternative to the legal claim they had

14  dismissed, nor that they had no adequate remedy at law.  Here, by contrast, Rule 8(d)(2) expressly

15  allows alternative pleading, and it is unknowable whether any of Plaintiffs' legal claims will

16  survive summary judgment or provide any remedy at all. *See In re Juul Labs, Inc., Mktg., Sales*

17  *Practices, & Prods. Liab. Litig.* ("*In re JUUL*"), No. 19-md-02913-WHO, 2020 U.S. Dist. LEXIS

18  197766, at *225-226 n.67 (N.D. Cal. Oct. 23, 2020) (denying motion to dismiss because plaintiffs

19  might not be able to secure legal remedy against all defendants); *Elgindy v. AGA Serv. Co.*, No.

20  20-CV-06304-JST, 2021 U.S. Dist. LEXIS 61269, *46-49 (N.D. Cal. Mar. 29, 2021) (same,

21  based on differences in elements between legal and equitable claims.)

22      **D.**    **Plaintiffs Maintain Standing for All Causes of Action.**

23          **1.**    **Plaintiffs Have Standing for Injunctive Relief.**

24       In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held

25  that consumers who were interested in purchasing future products with characteristics falsely

26  advertised as being present in a current product had standing to sue for injunctive relief under

27  [1] Note that current Federal Rule of Civil Procedure 8(d)(2) (Pleading in the Alternative) was
formerly Rule 8(e)(2), but that changed when former Rule 8(d) (Effect of Failure to Deny) was

28  amended to become Rule 8(b)(6) in 2020. As a result, the cited cases reference former "Rule
8(e)(2)," but relate to current Rule 8(d)(2).

PLAINTIFFS' OPP. TO DEFENDANTS'
MOT. TO DISMISS AND/OR STRIKE FAC
CASE NO. 5:21-CV-05606-BLF

1    California's UCL and similar consumer protection laws. *See Davidson*, 889 F.3d at 970-971

2    (standing to seek injunction upheld where plaintiff pled that she "continues to desire to purchase

3    wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes

4    manufactured by [Kimberly-Clark] if it were possible"; "regularly visits stores . . . where

5    [Kimberly-Clark's] 'flushable' wipes are sold"; and is continually presented with Kimberly-

6    Clark's flushable wipes packaging but has "no way of determining whether the representation

7    'flushable' is in fact true."). Here, Plaintiffs have established standing for injunctive relief based

8    on an interest in purchasing Bath & Body Works products in the future if not falsely advertised.

9    (FAC, ¶¶ 42 & 48.) The Complaint specifically alleges not only that each Plaintiff is interested in

10   purchasing beauty products, but that they are both specifically interested in Bath & Body Works

11   products, which necessarily include the products at issue. (*Id.*)

12          Defendants incorrectly argue that Plaintiffs lack standing to seek injunctive relief due to

13   failure to allege an intent to purchase "these specific" hyaluronic acid products in the future, based

14   on the Ninth Circuit's recent unpublished decision in *In re Coca-Cola Prods. Mktg. and Sales*

15   *Practices Litig.*, No.20-15742, 2021 WL 3878654, at *3 (9th Cir. Aug. 31, 2021). *Coca-Cola* is

16   inapposite, as it involved the effect of contradictory testimony on a Plaintiffs' standing after

17   certification of the class, not pleading requirements in a motion to dismiss. In *Coca-Cola*, the

18   plaintiffs' testimony established not only that they no longer purchased Coke, but that they would

19   not buy the product as formulated, even if advertised truthfully. Here, that is not an issue, because

20   neither Plaintiff has testified that they are disinterested in hyaluronic acid products or moisturizers,

21   nor Bath & Body Works products generally. And despite the opinion's use of the word "allege,"

22   the issue in *Coca-Cola* was *not* a failure to recite the name of the product in the sentence of the

23   complaint asking for injunctive relief. To the extent Defendants suggest that *Coca-Cola* creates

24   such a hyperformal requirement, they are mistaken.

25                    **2.      Plaintiffs Have Standing to Sue for All False Advertising Involving the
                            "1,000x Its Weight in Water" Claim.**

26
             The Complaint alleges facts sufficient to allow Plaintiffs to pursue claims for all Bath &

27
     Body Works products that, at a minimum, advertise that hyaluronic acid "attracts and retains up to

28

1    1,000x its weight in water." As Defendants admit (ECF 20 at 19), Plaintiffs have standing to pursue

2    claims based on non-purchased products if Plaintiffs alleged facts sufficient to establish that

3    similarities between purchased and non-purchased products are "substantial." *Wilson v. Frito-Lay*

4    *N. Am.*, 961 F. Supp. 2d 1134, 1141-42 (N.D. Cal. 2013). The relevant factors in this similarity

5    inquiry "include whether the challenged products are of the same kind, whether they are comprised

6    of largely the same ingredients, and whether each of the challenged products bears the same alleged

7    mislabeling." *Leonhart v. Nature's Path Foods,* No. 13-cv-00492-BLF, 2014 WL 6657809, at *3

8    (N.D. Cal. Nov. 21, 2014) (Freeman, J.).

9         The cases Defendants cite as "compel[ling] dismissal" are easily distinguishable.  All the

10   factors this Court considered in *Nature's Path* support Plaintiffs' standing here.  The Complaint

11   alleges that all of the products in question are skin care products, that they all contain hyaluronic

12   acid as their key ingredient, and that all are mislabeled and/or advertised with the same false claim

13   that hyaluronic acid "attracts and retains up to 1,000 times its weight in water." In *Romero v.*

14   *Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 U.S. Dist. LEXIS 59498, at *10 (N.D. Cal.

15   May 6, 2015), the plaintiffs had pled three different mislabeling theories, and the Court could not

16   discern which theories applied to which accused products. *Nature's Path* presented the same issue,

17   as the plaintiff there was asserting five unrelated theories of false advertising. Here, in contrast, the

18   allegation that the claim hyaluronic acid "attracts and retains up to 1,000x its weigh in water" is

19   false is common to all of Defendants' "Hyaluronic Acid Hydrating" Products, as well as their

20   "Mineral Body Polish." Further, the false and deceptive nature of that common advertising claim

21   supports the falsehood of the other claims alleged (e.g., "clinically tested," "water-loving," etc.) as

22   well. Accordingly, the Complaint places Defendants on notice of what theories are being asserted

23   against each Product, and establishes that Plaintiffs have standing to address all the Products

24   B&BW sells using this false advertising.

25        **E.    This Court Has Personal Jurisdiction Over B&BW, Inc.**

26        The Complaint asserts personal jurisdiction over both Bath & Body Works LLC

27   ("B&BWLLC") and L Brands, Inc. (now Bath & Body Works, Inc.) ("B&BWI"), alleging they are

28   engaged in a joint venture to sell the Hyaluronic Acid Products within California, and that each

1    "contributed to" and "ratified" the decision that led to the acts and omissions alleged in the

2    Complaint—to wit, the alleged false advertising and fraud. (FAC, ¶¶ 7-9 and 11.) (N.B., the

3    Complaint does not allege that either Defendant is subject to general jurisdiction within California.)

4    Accordingly, the Complaint alleges that B&BWI conducts business and derives substantial benefit

5    from within California. At the pleading stage, the Court must accept those allegations as true.

6         Defendants argue that Plaintiffs have not established personal jurisdiction over Bath &

7    Body Works, Inc. ("B&BW Inc." or, in Defendants' brief, "BBWI"), which is based outside of

8    California. But Defendants do not contest that this Court has personal jurisdiction over B&BW

9    LLC, which is also based outside of California. Plaintiffs are not privy to the internal workings of

10   Bath & Body Works LLC and Bath & Body Works, Inc., and are thus unable to determine whether

11   Defendants' representation that B&BW Inc. is nothing more than a holding company is true, absent

12   discovery. To the extent that B&BW Inc. and B&BW LLC both operate from the same

13   headquarters, and are both involved in the sale and marketing of the Hyaluronic Acid Products,

14   they are both reaching into California and thus subject to personal jurisdiction. Since B&BW LLC

15   does not contest that it is subject to personal jurisdiction within California, it follows that this Court

16   has personal jurisdiction over B&BW Inc, as well, if B&BW LLC is involved in the acts alleged

17   here. While Defendants assert that B&BWI "does not operate any stores, and has not sold anything

18   to Plaintiffs," that alone does not establish that it has no control of or involvement in the acts alleged

19   here. B&BW Inc. could act in other ways, such as by administering online sales or controlling or

20   even advising B&BW LLC's marketing decisions pertaining to the Products. Accordingly,

21   dismissal of B&BW Inc. is premature at this stage.

22        **F.    The FAC's References to "CLaim 2" are Moot.**

23        Defendants move to strike certain allegations, citing irrelevant references to one of the false

24   claims at issue in the *PTR* case. Plaintiffs already removed ten such references; to the extent four

25   references remain, that was inadvertent. To the extent Defendants move to strike allegations that

26   were inadvertently carried over from a prior complaint in the *PTR* case, see ECF 20 at 7-8

27   (discussing allegations relating to "instantly replenishes moisture"), Plaintiffs do not oppose the

28   motion, but do not believe it is necessary either.

1

### G.    The Court Should Grant Leave to Amend

2

Plaintiffs respectfully request that the Court grant leave to amend to correct any defects the

3

Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court

4

should grant a plaintiff leave to amend "if it appears at all possible that the plaintiff can correct the

5

defect"). In particular, if the Court decides it must dismiss the Complaint because it cannot consider

6

evidence that Plaintiffs attempted to incorporate by reference or believed was judicially noticeable

7

(e.g., details of Dr. Pirrung's testing of hyaluronic acid, survey evidence showing similar claims

8

were deemed material in the *PTR* litigation), Plaintiffs respectfully ask for leave to amend to include

9

those facts in a second amended complaint.

### V.    CONCLUSION

10

11

For the above-stated reasons, Plaintiffs respectfully ask this Court to reject Defendant's

12

arguments and deny Defendants' Motion to Dismiss. Plaintiffs also ask the Court to deny

13

Defendants' Motion to Strike in part, with respect to paragraph 21 of the Complaint. Plaintiffs

14

further request leave to amend to correct those portions of the Complaint that the Court strikes, and

15

to address any deficiencies as needed.

16

Dated:   March 28, 2022

17

Respectfully submitted,

18

19

By: */s/ Anthony J. Patek*
Anthony J. Patek

20

**Gutride Safier LLP**
100 Pine Street, Suite 1250

21

San Francisco, CA 94111
Telephone: (415) 505-6226

22

anthony@gutridesafier.com

23

*Counsel for Plaintiffs*

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2          I hereby certify that on March 28, 2022, I electronically filed the foregoing document with

3  the Clerk of the Court using the CM/ECF system, which will automatically send notification of

4  the filing to all counsel of record.

5                                 By: <u>/s/ *Anthony J. Patek*        </u>

6                                      Anthony J. Patek

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPP. TO DEFENDANTS'
MOT. TO DISMISS AND/OR STRIKE FAC
CASE NO. 5:21-CV-05606-BLF