**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
Anthony Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN PEREZ and ANDREA BROOKS, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BATH & BODY WORKS, LLC and BATH & BODY WORKS, INC.,<br><br>Defendants. | Case No.: 5:21-cv-05606-BLF<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION OF PLAINTIFF BROOKS<br><br>Hon. Beth L. Freeman<br><br>DATE: July 14, 2022<br>TIME: 9:00 AM<br>CTRM: 3 |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1
II. BACKGROUND ............................................................................................................... 2
III. LEGAL STANDARD ....................................................................................................... 2
IV. ARGUMENT .................................................................................................................... 3
    A.    Defendants Have Not Established that Either is Party to the Agreement. ................ 3
    B.    The Parties Did Not Agree to Arbitrate this Dispute. ................................................ 5
    C.    Plaintiff Brooks Should Not Be Subject to Arbitration of All Disputes Based on Enrolling in a Rewards Program that is not Implicated in the Present Claims. ......... 8
V.  CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Baker v. Osborne Development Corp.*, 159 Cal. App. 4th 884 (2008) ......................................... 9

*BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711 (Tex. App. 2015) ........................... 11

*Belyea v. GreenSky, Inc.*, 2020 U.S. Dist. LEXIS 116809 (N.D. Cal. July 2, 2020) .................... 3

*Briggs v. PFVT Motors LLC*, 2020 U.S. Dist. LEXIS 163949 (D.Ariz. Sep.8, 2020) ............... 10

*Britton v. Co-op Banking Grp.*, 4 F.3d 742 (9th Cir. 1993) ............................................................ 4

*C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411 (2001) ......... 9

*Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051 (10th Cir. 2018) ...................................... 5, 11, 12

*Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009) .................................... 4

*Connelly v. Hilton Grand Vacations Company, LLC*, 2012 U.S. Dist. LEXIS 81332 (S.D. Cal. June 11, 2012) ............................................................................................................................. 8

*Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995) ................................. 11

*First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938 (1995) ......................................................... 3

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132 (Tex. 1994) ...................................................... 10

*Fridl v. Cook*, 908 S.W.2d 507 (Tex. App. 1995) ...................................................................... 11

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287 (2010) ............................................. 3

*Hartley v. Superior Court*, 196 Cal.App.4th 1249 (2011) ............................................................ 9

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ......................................................... 9

*IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799 (Tex. App. 2012) .................... 10

*In re Henson*, 869 F.3d 1052 (9th Cir. 2017) ................................................................................ 3

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) .................................................... 4

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016) .................................................. 3

*Maree v. Deutsche Lufthansa AG*, 2021 U.S. Dist. LEXIS 16452 (C.D. Cal. Jan. 26, 2021) ...... 8

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ........................................... 9

*Mitchell v. U-Haul Co. of Cal.*, 2017 U.S. Dist. LEXIS 79064 (N.D. Cal. May 23, 2017) ..... 3, 4

*Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009) ....................................... 10, 11

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .................................................. 3

*Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017) ...................................... 9

*Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012) ......................................... 9

*Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090 (N.D. Cal. July 19, 2015) ........................... 8

*Reykhel v. BMW of N. Am. LLC*, 2019 U.S. Dist. LEXIS 233073 (N.D. Cal. Aug. 12, 2019)..... 5

## I. INTRODUCTION

Plaintiff Andrea Brooks alleges that Defendants Bath & Body Works, LLC and L Brands, Inc. now Bath & Body Works, Inc. (collectively, "Defendants" or "BBW") falsely advertised certain skin products with hyaluronic acid that "attracts and retains up to 1,000x its weight in water to make skin look more smooth and supple." Defendants previously moved to compel Plaintiff Brooks to arbitrate her claims based on arbitration provisions in their unrelated rewards program agreement. This Court denied Defendants' motion, finding they failed to meet their burden of proof and ordered Defendants to provide proof of the terms and conditions to which Plaintiff Brooks assented. Dkt. 52 at 1-2 ("Bath & Body Works can only carry its burden by providing the terms and conditions to which Ms. Brooks assented.") Defendants' now renew their motion to compel arbitration as to Plaintiff Brooks.[1]

Defendants again fail to carry their burden of proof. The sign-up flow Defendants provide in their renewed motion to compel arbitration does not show Plaintiff Brooks' assent to the terms and conditions. Regardless, the arbitration agreement clearly does not apply to the dispute here. Neither Defendant is a party to the rewards program agreement that contains the arbitration clause they seek to enforce. And, although Defendants attempt to deflect this issue (and the other obvious flaws with the rewards agreement) by arguing that all issues of arbitrability are reserved for the arbitrator, that argument does not hold water. The relevant terms are incomplete and contradictory, a fact Defendants attempt to conceal by drawing language from provisions not in Plaintiff Brooks' sign-up flow and by editing out conflicting provisions. At minimum, the agreement does not unambiguously reserve all questions of arbitrability for the arbitrator, as required. Even still, the Ninth Circuit has held that district courts should determine whether the defendant compelling arbitration is actually a party to the arbitration agreement, and here neither defendant is. Further, Brooks' claims are wholly unrelated to Defendants' rewards program, to which the arbitration agreement is plainly limited. Two non-parties to an arbitration agreement that by its

---

[1] Defendants also requested leave to conduct discovery as to Plaintiff Perez. Though leave was denied, Defendants have completed that discovery, but do not move to compel arbitration against Ms. Perez. Irrespective of the outcome of this motion, Plaintiff Perez's claims will proceed in this Court

1

own plain terms does not cover the claims at issue in the case cannot force a plaintiff into arbitration by claiming that all such obvious deficiencies must first be addressed by the arbitrator. Such an outcome would be absurd, and extremely easy to abuse. Arbitration is a matter of "consent, not coercion" and here Plaintiff has not consented to arbitrate any disputes with these defendants, let alone the ones specifically at issue in this case. Ultimately, these are not questions of "arbitrability" but whether there is any valid agreement to arbitrate the dispute at issue in this case between these parties. There is not. Defendants' renewed motion to compel arbitration should be denied.

## II.     BACKGROUND

Defendants sell beauty products online and at their company-owned retail locations. Dkt. 47 at ¶ 17. A line of Defendants' products falsely represents to consumers, both in-store and online, that hyaluronic acid, an ingredient, is a "waterloving molecule" that "retains up to 1,000x its weight in water to make skin look smoother and more supple" and is "clinically proven to lock in moisture." *Id.* at ¶¶ 22-24, 28. In reality, hyaluronic acid attracts and retains a nominal amount of water. *Id.* at ¶¶ 27-33, 97. Plaintiff Brooks was among the consumers Defendants deceived, and filed suit on behalf of a class of similarly situated consumers. *Id.* at ¶¶ 38-49.

Plaintiff Brooks registered for the My Bath & Body Works loyalty rewards program in September 2017, which program is administered by two nonparties to this action, Bath & Body Works Brand Management, Inc., and Bath & Body Works Direct. In December 2018, she purchased Defendants' products at issue. Defendants attempt to compel Plaintiff Brooks to arbitrate her claims based on arbitration provisions associated with the rewards club membership. This Court denied Defendants' previous motion to compel arbitration without prejudice based on their failure to carry their burden to prove that Plaintiff Brooks assented to the terms and conditions in effect at the time she signed up for Defendants' rewards program. The Court specifically noted "Because the relevant terms and conditions are not properly before it, *the Court expresses no opinion on the merits of whether the claims are subject to arbitration*." Dkt. 60 at 2 (emphasis added). Defendants now file the present renewed motion to compel arbitration with the same procedural and evidentiary deficiencies as their prior motion.

## III.    LEGAL STANDARD

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299 (2010); *In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017). In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

California law applies because Plaintiff challenges the existence of an agreement, and applying the Ohio choice of law provision presumes an enforceable contract exists. Further, BBW, as the party advocating for Ohio law, "bears the burden of identifying the conflict between California and that state's laws and establishing that the foreign state has an interest in having its law applied." *Belyea v. GreenSky, Inc.*, 2020 U.S. Dist. LEXIS 116809, at *19-20 (N.D. Cal. July 2, 2020). Because BBW failed to do so, "the court may properly find California law applicable without proceeding to the third step in the analysis." *Id.* (internal quotations omitted). To form a contract under California law, the parties must mutually assent to the terms, which "applies with equal force to arbitration provisions contained in contracts purportedly formed over the Internet." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Defendants, "as the part[ies] seeking to compel arbitration, ha[ve] the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Mitchell v. U-Haul Co. of Cal.*, 2017 U.S. Dist. LEXIS 79064, at *1 (N.D. Cal. May 23, 2017). Defendants fail to do so.

### IV.   ARGUMENT

#### A.   Defendants Have Not Established that Either is Party to the Agreement.

"Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013), quoting *Britton v. Co-op Banking Grp*., 4 F.3d 742, 744 (9th Cir. 1993). Accordingly, the "strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Kramer*, 705 F.3d at 1126, quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009). Thus, in *Kramer*, the Ninth Circuit held that the district court could decide issues of arbitrability because the language in the putative arbitration

agreement evidenced the plaintiffs' intent to arbitrate disputes with Toyota's dealerships, but not Toyota itself. *Kramer*, 705 F.3d at 1128. The court reasoned, "[i]n the absence of a disagreement between Plaintiffs and the Dealerships, the agreement to arbitrate arbitrability does not apply." *Id.* It accordingly held that the Court, not the arbitrator, had authority to decide issues such as scope and arbitrability.

Here, Defendants have not established that either of them is a party to the Agreement. This is a preliminary question that the Court must resolve before resolving any other questions involving the putative arbitration agreement, because, if neither Defendant is a party to that contract, they have no standing to move to compel its enforcement. The one sentence Defendants rest their entire argument on is, at best, ambiguous, identifying a list of *potential* parties. *See* Dkt. 61-1 at 84 ("Participation in the Program and its benefits are offered at the sole discretion of Bath & Body Works Brand Management, Inc., Bath & Body Works Direct, Inc., **or** their affiliates or assignees ('Bath & Body Works').") (emphasis added). That sentence does not unambiguously establish that the affiliates are signatories. And, like in *Kramer*, the arbitration clause itself does not list the affiliates as parties with whom disputes must be arbitrated. Granted, the terms and conditions may use the phrase "any dispute . . . shall be submitted to arbitration," but that language cannot reasonably be read to include "any" party, nor "any dispute" unrelated to the Loyalty Program. For example, one would not assume that Brooks had agreed to arbitrate a wrongful death suit or employment claim against even the named parties by enrolling in the "My Bath & Body Works Loyalty Program." Nor would anyone reasonably read the terms and conditions to mean they were entering into an agreement with unnamed parties, much less agreeing to arbitrate unrelated claims involving those unnamed parties. *See, e.g., Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051 (10th Cir. 2018) (holding that rewards program agreement could not reasonably be read to create an agreement to arbitrate claims unrelated to rewards program, and that court thus had authority to rule on scope of agreement.)

In an attempt to side-step this issue, Defendants mistakenly cite to a slew of Ohio law that putatively requires the Court to recognize them as signatories, even though they are not named in the terms and conditions. But Ohio law is irrelevant, because the Ohio choice of law provision has no effect until Defendants have proven that they have standing to enforce the terms and conditions. Defendants'

entire argument is circular, asking the Court to hold they have standing to enforce the terms and conditions by assuming that they have said standing. The only California law Defendants cite, *Reykhel v. BMW of N. Am. LLC*, No. 19-cv-01900-SK, 2019 U.S. Dist. LEXIS 233073, at *2 (N.D. Cal. Aug. 12, 2019), is inapposite, because the arbitration clause explicitly listed "affiliates" as being able to invoke arbitration. That fact is not present here.

### B.      The Parties Did Not Agree to Arbitrate this Dispute.

This Court ordered Defendants to present evidence of the terms and conditions as they appeared at the time Plaintiff Brooks signed up for the rewards program. Defendants have again failed to meet their burden that Plaintiff Brooks assented to arbitrate her disputes with Defendants.

First, despite assertions to the contrary, Defendants do not include a complete copy of the terms and conditions Plaintiff Brooks was alleged to have seen and scrolled through via the mobile application. *Compare* Dkt. 61 at 7 ("The full sign-up flow Brooks would have seen when she signed up for the Rewards Program and consented to the T&Cs is attached to this Motion as Exhibit D.") *with* Dkt. 61-1 at 82-85 (showing an abbreviated sign-up flow). This fact is critical because scrolling through the terms and conditions was the only way Plaintiff Brooks would have seen them on her phone and assented to them. There was no hyperlink to the terms and conditions in the sign-up flow for the rewards program. *See* Dkt. 61-1 at 82-85. Further, the only arbitration provision displayed in Defendants' evidence of what Plaintiff Brooks saw is a portion of the problematic class action waiver discussed below.

Second, unlike the 2019 version previously put before the Court, the 2017 version of the terms and conditions was not like the catalog of clickwrap cases Defendants cite in their motion, where a user checks a box indicating assent to the terms or is informed that moving beyond a page constitutes assent to the terms. Images of both are shown below for the Court's comparison:



2019 Agreement Presentation (Dkt. 61-1 at 87.).



2017 Agreement Presentation (Dkt. 61-1 at 85.).

     In the 2017 interface, the "Agree" button appears to already be pre-selected and highlighted. Defendants maintain that if Plaintiff Brooks had selected the de-emphasized "Disagree" button, she would have seen a pop-up preventing her from proceeding with rewards club membership to proceed. Dkt. 61 at ¶¶ 9-10. However, Defendants failed to submit any evidence of this purported pop-up screen. Thus, there is no proof Plaintiff Brooks had to agree to the terms and conditions to join the rewards program.

     Third, Defendants have failed to produce any evidence of Plaintiff Brooks' specific application in

their motion. *See Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1100-1101 (N.D. Cal. July 19, 2015) (noting defendants' failure to present evidence of plaintiffs' specific rewards program application or notification of ongoing changes or opportunity to assent to or refuse consent to terms of condition created a genuine issue of material fact to consent to terms (*citing Connelly v. Hilton Grand Vacations Company, LLC*, 2012 U.S. Dist. LEXIS 81332, at *3-4 (S.D. Cal. June 11, 2012)).

Finally, Defendants' terms and conditions are contradictory, and thus do not assign questions of scope to the arbitrator unambiguously. Defendants point to the AAA rules incorporated by reference as proof the arbitrator should decide the issue of the existence, scope or validity, or the arbitration agreement. *See* Dkt. 61 at 13 ("ANY DISPUTE THAT CANNOT FIRST BE RESOLVED THROUGH INFORMAL METHODS WILL BE SUBMITTED TO BINDING ARBITRATION UNDER THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA")."). However, ***the terms and conditions actually presented to Plaintiff Brooks assigned all issues regarding the scope***, ***interpretation, and enforcement of the class action waiver to the court***, as shown below:

> Notwithstanding any other provision of these Terms, any and all issues relating to the scope, interpretation and enforceability of the class action waiver provisions contained herein (described in this "No Class Action Matters" section), are <u>to be decided only by a federal or state court located in Columbus, Ohio, and not by the arbitrator</u>. The arbitrator does not have the power to vary these class action waiver provisions. This section survives the termination of the Program.

(Dkt. 61-1, Exhibit D (emphasis added).) Defendants do not even include the AAA arbitration language cited in their brief in their proof of what Plaintiff Brooks would have seen. It should also be noted that Defendants edited out this contrary provision in the quotation in their brief. *See* Dkt. 61 at 7-8. Because the language within the terms and conditions is inconsistent, those inconsistencies must be construed against BBW. *See Maree v. Deutsche Lufthansa AG*, 2021 U.S. Dist. LEXIS 16452, at *10-11 (C.D. Cal. Jan. 26, 2021) (noting if the parties have not "clearly and unmistakably" provided otherwise, the Court must reject Defendants' argument that the issue of arbitrability must be decided by an arbitrator); *Baker v. Osborne Development Corp.*, 159 Cal. App. 4th 884, 891, 893-894 (2008) (stating "In the absence of a clear, consistent, and unambiguous reservation of [the issue of enforceability] to the arbitration, it is

properly decided by the court" and noting any ambiguities between the role of the arbitrator and the role of the court are to be resolved in favor of the court deciding as parties should not be forced to arbitrate issues to which they have not agreed); *Hartley v. Superior Court*, 196 Cal.App.4th 1249, 1256 (2011) (inconsistencies between terms and conditions and JAMS standard rules are to be construed against the drafter and issues should be decided by the court); *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1440-1441 (2012) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)); *see also*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63 & fn. 10 (1995) (noting court must protect the party who did not choose the language from an unintended or unfair result); *C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 423 (2001) (same).

### C. Plaintiff Brooks Should Not Be Subject to Arbitration of All Disputes Based on Enrolling in a Rewards Program that is not Implicated in the Present Claims.

Defendants must also prove that an enforceable arbitration agreement covers Plaintiff Brooks' claims. *See Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). They cannot do so. The Ninth Circuit explains that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which "he has not agreed so to submit." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009); *see also Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent"); *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 806 (Tex. App. 2012) (a determination of whether a party can compel arbitration "requires courts to honor parties' expectations"). Thus, the "presumption in favor of arbitration ... does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." *Id.* at 1044-45.

Here, the terms and conditions relate specifically to BBW's Loyalty Program, not BBW's representations about its products purchased elsewhere and governed by a different terms of service that does not contain any arbitration agreement. The full terms and conditions itself reiterates this point throughout. The terms and conditions state, at the very top of the agreement: "These Terms and Conditions ('Terms') contain important information ***about your rights and obligations in the My Bath & Body Works Loyalty Program***." Dkt. 61-1 at 84. (emphasis supplied.) It further states that "All Program

Terms" apply "to My Bath & Body Works membership, earning Rewards, Reward redemption, and benefits." *Id.* The claims in this case have nothing to do with BBW's Loyalty Program or Rewards or benefits. It accordingly does not fall within the scope of the terms and conditions' arbitration provision. *See, e.g., Briggs v. PFVT Motors LLC*, 2020 U.S. Dist. LEXIS 163949, at*6 (D.Ariz. Sep.8, 2020) (holding that "the arbitration clause does not encompass the dispute at issue" because the "suit is the result of Defendant's extra-contractual actions, unrelated to the promises outlined in the parties' contract.")

  BBW nevertheless contends that Plaintiff Brooks agreed to arbitrate her claims because she consented to the terms and conditions for its loyalty program when she registered in September 2017. Dkt. 61 at 6. Even if true, the arbitration provision in the terms and conditions does not apply to the claims in this case, which centers on BBW's false labeling of its products. Defendants' contention that Brooks purchased the hyaluronic acid products while signed into to her rewards account does not affect the analysis. (It is also not proved.) The claims at issue in this case do not relate to the Rewards Program or Rewards, and the nature of the claims is what determines whether this case falls within the scope of the arbitration provision. *See e.g., Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) (stating "with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship" and holding that antitrust claims were outside the scope of an arbitration clause in a licensing agreement); *BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711, 718 (Tex. App. 2015) (holding that "[w]hether a claim is subject to arbitration turns on its substance"); *Fridl v. Cook*, 908 S.W.2d 507, 513 (Tex. App. 1995) (finding it would be difficult to see that a claim arose out of or related to a rewards program contract because even if the parties honored their contractual obligations in every respect under the Rewards Program agreement, the contractual compliance would not affect plaintiff's allegations). Here, there is not a single mention of Rewards or the Rewards Program in the Complaint, nor are the claims related to Rewards or the Rewards Program in any way. *See, e.g., Mundi*, 555 F.3d at 1045 (finding that plaintiff's claim "is simply not within the scope of the arbitration agreement, even if it is related in some attenuated way to 'accounts, loans, services or agreements' subject to the arbitration provision").

  The court's findings and holding in *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051 (10th Cir. 2018)

are instructive. In *Cavlovic*, a major retailer sought to bind a purchaser to an arbitration agreement in a fraud case, based on an unrelated arbitration provision in her rewards program agreement. The court rejected the defendant's overbroad interpretation of its putative arbitration agreement:

> J.C. Penney would have us end our inquiry [at the "any dispute" language], and hold that because the relevant contractual language is broad, any allegation by Cavlovic against J.C. Penney that even tangentially involves the 2014 Rewards Program agreement must be subject to arbitration. . . . One can imagine many matters that would fall within that category. For instance, the parties likely agreed to arbitrate a disagreement about whether Cavlovic was receiving an adequate number of Rewards Points, or whether J.C. Penney was giving Cavlovic the proper amount of store credit for her Rewards Points. Yet, a plain reading of the arbitration provision does not support the conclusion that Cavlovic and J.C. Penney also agreed to arbitrate disputes about purchases Cavlovic made at J.C. Penney on which she happened to earn J.C. Penney Rewards Points. The complaint's allegations of fraudulent advertising do not "aris[e] from," . . . the Rewards Program or the amount of Rewards Points Cavlovic received for purchases. . . . J.C. Penney argues Cavlovic's purchase of the earrings was "relat[ed] to" the Rewards Program . . . in that after Cavlovic purchased the earrings, J.C. Penney awarded her 158 Rewards Points. . . . [T]he mere existence of the Rewards Program agreement is not itself sufficient to conclude that Cavlovic's allegations of deceptive advertising arise from or relate to that contract.

*Cavolic*, 884 F.3d at 1059-1060. Similarly, Plaintiff Brooks' claims simply do not fall within the scope of the arbitration provision BBW seeks to enforce. Their attempt to put her claims before an arbitrator should be rejected.

## V.   CONCLUSION

For the above-stated reasons, Plaintiffs respectfully ask this Court to deny Defendants' Renewed Motion to Compel Arbitration for Plaintiff Andrea Brooks.

Dated: April 12, 2022                                   **GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek /s/*
Seth A. Safier, Esq.
Anthony Patek, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiff