UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARMEN PEREZ, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>BATH & BODY WORKS, LLC, et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-05606-BLF<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION OF ANDREA BROOKS**<br><br>[Re: ECF No. 61] |

Now before the Court is a renewed motion to compel arbitration brought by Defendants Bath & Body Works, LLC and Bath & Body Works, Inc. ("BBW"). ECF No. 61 ("MTC"). BBW argues that Plaintiff Andrea Brooks must arbitrate her claims because of an arbitration provision in the terms and conditions of the My Bath & Body Works Rewards Program. Brooks opposes the motion. ECF No. 68 ("Opp."). The Court held a hearing on this motion on June 30, 2022. For the following reasons, the Court GRANTS the renewed motion to compel arbitration of Brooks.

**I.   BACKGROUND**

BBW offers customers the option of enrolling in the "My Bath & Body Works" Reward Program (the "Program"). ECF No. 61-2 ("Lovell Decl.") ¶¶ 5–6. Through the Program, customers are eligible for discounts and perks. Customers can enroll in the Program in participating stores, online at BBW's website, or via the BBW mobile application. *Id.* Customers do not have to participate in the Program to purchase products from BBW. *Id.*

Brooks enrolled in the Program through BBW's mobile application on September 8, 2017 and has remained a member ever since. ECF No. 61-1 ("Puscas Decl.") ¶¶ 4, 5. Brooks provided her email address, name, and phone number to create a My Bath & Body Works account to enroll in the Program. *Id.* ¶ 9. To sign up, Brooks was required to scroll through the Program's Terms

1    & Conditions ("T&Cs") and click a separate button at the bottom of the T&Cs indicating her

2    agreement. *Id.*; Lovell Decl. ¶ 8. Brooks could not have signed up without agreeing to the T&Cs.

3    Puscas Decl. ¶¶ 9–11 & Ex. D (showing sign-up process via BBW mobile application in

4    September 2017).

5    The T&Cs to which Brooks assented included the following arbitration clause:

> **ANY DISPUTE THAT CANNOT FIRST BE RESOLVED THROUGH INFORMAL MEANS WILL BE SUBMITTED TO BINDING ARBITRATION UNDER THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA")** then in effect (the "Rules"), except as modified herein. The arbitration will be administered by AAA. Claims or disputes that fall within the scope of the small claims court's limited jurisdiction may, however, be submitted to such court. **BY AGREEING TO ARBITRATE, EACH PARTY IS GIVING UP ITS RIGHT TO GO TO COURT AND HAVE ANY DISPUTE HEARD BY A JUDGE OR JURY. If an in-person arbitration hearing is required, then it will be conducted in Columbus, Ohio, United States.** . . . Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered thereon in the federal or state courts located in Columbus, Ohio, United States. The Federal Arbitration Act ("FAA") will apply to the dispute and will govern whether the dispute is subject to arbitration, including the No Class Action Matters section below. You can obtain AAA procedures, rules and fee information as follows: AAA: 800.778.7879, http://www.ADR.org. This section survives the termination of the Program.

18   Puscas Decl. Ex. A at 8–9. Although the T&Cs were modified by the time Brooks made the

19   purchases that are the subject of her claims in this lawsuit, the arbitration provision remained the

20   same. *See id.* Exs. B at 17-18 (T&Cs in August 2018), C at 78–79 (T&Cs in October 2019).

21   The T&Cs further included a class action waiver entitled "No Class Action Matters,"

22   which stated:

> Disputes hereunder will be arbitrated only on an individual basis and will not be joined or consolidated with any other arbitration or other proceedings that involve any claim or controversy of any other party. **THIS MEANS YOU AND BATH & BODY WORKS AGREE THAT EACH MAY BRING CLAIMS REGARDING SUCH DISPUTES AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING OR AS AN ASSOCIATION.** There will be no right or authority for any dispute to be arbitrated on a class action basis or on any basis involving

2

> disputes brought in a purported representative capacity on behalf of the general public, or other persons or entities similarly situated. . . . Notwithstanding any other provision of these Terms, any and all issues relating to the scope, interpretation and enforceability of the class action waiver provisions contained herein (described in this "No Class Action Matters" section), are to be decided only by a federal or state court located in Columbus, Ohio, and not by the arbitrator. The arbitrator does not have the power to vary these class action waiver provisions. This section survives the termination of the Program.

Puscas Decl. Exs. A at 9, B at 18, C at 78–79.

After a customer creates a Program account, she can log into this account whenever she wants to make a purchase online or through the mobile application. *See* Lovell Decl. ¶ 9. In store, a customer can provide her phone number or email address to the store associate to use her Program account. *Id.*

Brooks alleges that she purchased BBW's Hydrating Body Cream product in December 2018 based on her understanding that it "would be exceptionally hydrating on her skin." ECF No. 47 ("FAC") ¶ 54. In the operative First Amended Complaint, Brooks and Carmen Perez (the other named plaintiff who is not the subject of a motion to compel arbitration) bring six claims against BBW. *Id.* ¶¶ 71–128. BBW previously filed a motion to compel arbitration, which the Court denied without prejudice for failure to submit sufficient evidence of the relevant arbitration agreement in its opening motion. ECF No. 52. The Court permitted the filing of a renewed motion to compel, following the procedure in *Snow v. Eventbrite, Inc.*, 2021 WL 3931995, at *2–6 (N.D. Cal. Sep. 9, 2021).

## II. LEGAL STANDARD

Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020). Under the FAA, a court must determine two issues in deciding a motion to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

## III. DISCUSSION

### A. The Agreement to Arbitrate is Valid and Enforceable

Brooks disputes the validity and enforceability of the arbitration provision in the T&Cs. First, Brooks argues that BBW has not established that either Defendant is a party to the T&Cs. Opp. at 3–5. Brooks says the T&Cs do not unambiguously apply to entities other than those that are named: "Bath & Body Works Brand Management, Inc." and "Bath & Body Works Direct, Inc." *Id.* BBW argues that the T&Cs specify that those entities' "affiliates and assignees," which would include BBW, are also parties to the T&Cs. MTC at 7; ECF 69 ("Reply") at 4–5. The Court agrees with BBW that because the T&Cs specify that they also apply to "affiliates and assignees" of the named entities, Defendants here are parties to the T&Cs who can enforce the terms of the T&Cs, including the arbitration provision. *Reykhel v. BMW of N. Am. LLC*, 2019 WL 10056984, at *3 (N.D. Cal. Aug. 12, 2019) (arbitration agreement between a lessor and the lessee or its "employees, officers, directors, affiliates, successors, or assigns" could be enforced by defendant, an affiliate of a party bound by the agreement); *Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124, 1129 (N.D. Cal. 2018) (arbitration agreement between Uber user and "Uber USA, LLC and its subsidiaries and affiliates" could be enforced by Uber Technologies, "the parent company that controls Uber USA, LLC"). Brooks does not dispute that Defendants here are affiliates of the named entities because they are all "under common ownership or control." Lovell Decl. ¶ 3. In contrast, Brooks' cited case *Kramer v. Toyota Motor Corp.* involved an arbitration agreement "expressly limited to Plaintiffs and the Dealerships," so it could not be enforced by other entities, whereas express "affiliates or assignees" language is included here. 705 F.3d 1122, 1127 (9th Cir. 2013). Defendants are thus encompassed in the T&Cs and can enforce the terms of the T&Cs, including the arbitration provision.

Second, Brooks asserts that BBW has not established that she herself was a party to the T&Cs because (1) BBW has not included the entire sign-up flow she is alleged to have seen and scrolled through and (2) BBW has not provided Brooks' specific Program application. Opp. at 5, 6–7. The Court disagrees that BBW has failed to carry its burden on these points. BBW provided a sworn declaration stating that Brooks could not have enrolled in the Program without scrolling

4

through the T&Cs and pressing "Agree" at the end.  Puscas Decl. ¶ 9, 11.  That declaration includes images of the sign-up flow, Puscas Decl. Ex. D, and states that Brooks signed up for the Program through that sign-up flow, *id.* ¶¶ 4, 9, 11.  The declaration is now unrebutted because Brooks has not submitted her own declaration saying anything to the contrary.  *See Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011) ("[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends.").  Courts including this one have approved of the type of evidence BBW has submitted.  *See, e.g.*, *Cooper v. Adobe Sys. Inc.*, 2019 WL 5102609, at *5 (N.D. Cal. Oct. 11, 2019) (unrebutted declaration regarding sign-up flow sufficient to establish plaintiff's assent).

Third, Brooks argues BBW has not produced evidence of a valid clickwrap agreement because at the time Brooks agreed to the T&Cs, the T&Cs required only that she click a button that said "Agree" before proceeding, rather than checking a box indicating her express agreement to the T&Cs before separately clicking a button to proceed.  Opp. at 5–6.  But Brooks does not provide any authority for her argument that BBW's form of obtaining assent does not result in a valid agreement.  In fact, agreements that "require[] users to physically scroll through an internet agreement and click on a separate 'I agree' button in order to assent" are not called "clickwrap agreements," but are instead referred to as "scrollwrap agreements."  *Dicky v. Ticketmaster LLC*, 2019 WL 9096443, at *4 n.2 (C.D. Cal. Mar. 12, 2019) (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 395 (E.D.N.Y. 2015)).  BBW has established that its T&Cs were a scrollwrap agreement at the time Brooks first agreed to them.  *See* Puscas Decl. ¶ 9 (user "required to scroll through the entirety of the [T&Cs], at the base of which they were presented with a choice either to 'AGREE' or 'DISAGREE' with the terms").  There is "little doubt" that scrollwrap agreements are enforceable, as they affirmatively show the terms to the user before obtaining assent rather than linking to a separate page containing the terms that does not need to be viewed prior to agreement (as clickwrap agreements do).  *Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 886 (9th Cir. 2022) (discussing California law) (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)); *Ranazzi v. Amazon.com*, 46 N.E.3d 213, 219 (Ohio Ct. App. 2015) (enforcing

scrollwrap agreement under Ohio law).[1]  The T&Cs were thus a valid scrollwrap agreement.

The Court finds that the T&Cs' arbitration clause is valid and enforceable against Brooks.

### B. The Parties Delegated Arbitrability to the Arbitrator

The second question—whether the arbitration agreement in the T&Cs covers this dispute—is not for the Court to answer.  The T&Cs incorporate the AAA rules, which in turn state that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See* AAA Commercial Arbitration Rules, R. 17.  Incorporation of AAA rules into a contract "constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability."  *Ramirez v. Elec. Arts Inc.*, 2021 WL 843184, at *4 (N.D. Cal. Mar. 5, 2021) (citing cases).  Because the T&Cs incorporate the AAA rules into the arbitration clause, Puscas Decl. Ex. A at 8–9, the parties clearly and unmistakably delegated issues of arbitrability to the arbitrator.

Brooks' only argument against enforcement of this clear and unmistakable delegation is that the T&Cs are contradictory because the class action waiver contains language reserving for the Ohio courts issues of "the scope, interpretation and enforceability of the class action waiver provisions contained herein."  Opp. at 7 (citing Puscas Decl. Ex. D).  But the scope, interpretation, and enforceability of the *class action waiver* is an issue separate from the scope of the *arbitration provision*, which is the provision at issue in this motion.  There is nothing inconsistent about reserving for a court the issue of enforceability of a class action waiver but delegating the issue of arbitrability of claims to the arbitrator.

Brooks' other arguments about the scope of the arbitration provision are thus not issues for this Court to decide.  *See* Opp. at 4 (citing *Cavlovic v. J.C. Penny Corp.*, 884 F.3d 1051 (10th Cir. 2018)), 8–10 (arguing that the T&Cs relate to disputes about the Program itself, not BBW's

---

[1] Because the result is the same under either Ohio or California law, the Court need not resolve the parties' dispute over whether the Court can apply the Ohio choice-of-law provision in later versions of the T&Cs.  *See* MTC at 6–7 (pointing to choice-of-law provision but saying the result is the same under either state's law); Opp. at 3 (arguing that California law applies because enforcing the choice-of-law provision "presumes an enforceable contract exists").

product representations, and so the claims in this lawsuit are not arbitrable). These are issues that Brooks can raise before the arbitrator.

\*         \*         \*

Because the Court has found that the arbitration provision is valid and enforceable and that the parties delegated arbitrability to the arbitrator, Brooks must arbitrate her claims in this lawsuit. BBW asks the Court to stay this case until arbitration is completed. MTC at 9. The Court will not stay the entire action because BBW has not moved to compel arbitration as to Plaintiff Perez. The Court does, however, find that a short stay is appropriate as to claims brought by Brooks. Because the arbitrator may decide that Brooks' claims are outside the scope of the arbitration provision, the Court finds that dismissal of Brooks from this case at this moment would not be appropriate. *See Silverman v. Move Inc.*, 2019 WL 2579343, at \*12 (N.D. Cal. Jun. 24, 2019) (staying action "pending the arbitrator's decision on the arbitrability of the dispute").

If Brooks intends to pursue arbitration, she SHALL initiate arbitration **within 60 days** and file a notice with the Court indicating she has done so. If no notice is filed with the Court within 60 days, Brooks will be dismissed from this case. If notice is timely filed, the stay will continue.

If Brooks does initiate arbitration, the parties SHALL notify the Court within ten days of the arbitrator's decision on whether Brooks' claims are arbitrable, and the Court will either (1) dismiss Brooks from this lawsuit without prejudice to filing a later action to confirm or vacate any arbitration award, if the claims are arbitrable; or (2) lift the stay as to Brooks and allow her case to proceed in this Court, if the claims are not arbitrable.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to compel arbitration of claims brought by Plaintiff Andrea Brooks is GRANTED. The case is STAYED as to Brooks only as outlined above. This case will proceed as to claims brought by Plaintiff Carmen Perez, who is not affected by this Order.

Dated: June 30, 2022

BETH LABSON FREEMAN
United States District Judge

7