1

2

3                 **UNITED STATES DISTRICT COURT**

4              **NORTHERN DISTRICT OF CALIFORNIA**

5                    **SAN JOSE DIVISION**

6

7 CARMEN PEREZ, et al.,            Case No. 21-cv-05606-BLF

8          Plaintiffs,

9     v.                      **ORDER DENYING IN PART AND GRANTING IN PART WITHOUT LEAVE TO AMEND MOTION TO DISMISS SECOND AMENDED COMPLAINT**

10 BATH & BODY WORKS, LLC, et al.,

11          Defendants.

                                                [Re: ECF No. 102]

12

13

14       In this case, Plaintiff Carmen Perez[1] challenges representations made on a series of

15 products sold by Defendants Bath & Body Works, LLC and Bath & Body Works, Inc. ("BBW").

16 Perez alleges that BBW falsely claims that hyaluronic acid, an ingredient in those products,

17 "attracts and retains up to 1,000x its weight in water to make skin look smoother and more

18 supple." She brings three common law claims and three California consumer protection claims

19 and seeks to represent a California class of consumers who purchased the products after July 21,

20 2017.

      Now before the Court is BBW's motion to dismiss under Rule 12(b)(1). ECF No. 102

21 ("MTD"); *see also* ECF No. 104 ("Reply"). Perez opposes the motion. ECF No. 103 ("Opp.").

22 The Court held a hearing on the motion on May 3, 2023. *See* ECF No. 109. For the following

23 reasons, the Court DENIES IN PART and GRANTS IN PART WITHOUT LEAVE TO AMEND

24 the motion to dismiss.

25

26 _____

27 [1] The Court separately granted Defendants' motion to compel arbitration as to claims brought by

28 Plaintiff Andrea Brooks and stayed proceedings on her claims. *See* ECF No. 77.

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.   BACKGROUND

As alleged in the Second Amended Complaint, Defendants market products including skin creams, lotions, scrubs, shampoos, conditioners, scents, and body wash to consumers who visit BBW's stores or website.  ECF No. 95 ("SAC") ¶ 38.  Among those products is a line called "WATER" / "HYDRATING", which includes several products that use hyaluronic acid:

- BBW Hyaluronic Acid Hydrating Body Cream (in varying scents);
- BBW Hyaluronic Acid Hydrating Hand Cream (in varying scents);
- BBW Hyaluronic Acid Hydrating Body Wash;
- BBW Hyaluronic Acid Hydrating Body Gel Lotion; and
- BBW Hyaluronic Acid Mineral Body Polish (in varying scents).

*Id.* ¶ 41 (the "Products").

Perez alleges that BBW makes false claims on the Products "to trick consumers into believing that the [Products] contain unique moisturizing properties."  SAC ¶ 52.  Perez provides the example of the Hyaluronic Acid Hydrating Body Cream.  *Id.* ¶¶ 53–55.  The back of the tube of that product allegedly contains the following representation: "attracts and retains up to 1,000x its weight in water to make skin look smoother and more supple" ("1,000x claim").  *Id.* ¶ 54.  Perez alleges that in-store personnel were instructed to make these claims, that in-store, point-of-sale advertising included these claims, and that BBW's website contains similar representations.  *Id.* ¶¶ 56–58.  Perez also alleges that BBW "makes materially identical claims for all of its Hyaluronic Acid Products."  *Id.* ¶ 60.  Perez alleges that the product labels for the Body Gel, Body Wash, and Hand Cream all include the 1,000x claim.  *Id.* ¶¶ 61-63.  She alleges that the 1,000x claim is made on the website and point-of-sale advertising for the Body Polish.  *Id.* ¶ 64.

Perez alleges that the 1,000x claim is false.  SAC ¶¶ 70-71.  The hyaluronic acid in the product is, for example, allegedly not capable of absorbing 1,000 times its weight in water.  *Id.* ¶¶ 71-81.  Perez alleges that BBW knows these representations are false but made them anyway to take advantage of a growing market for beauty and skincare.  *Id.* ¶¶ 82–91.

In approximately February or March 2019, Plaintiff Carmen Perez visited a BBW store in Milpitas, California and purchased the Hyaluronic Acid Hydrating Body Cream.  SAC ¶ 93.

1   Based on the representations made on the product and repeated by a store employee, Perez

2   believed the product was capable of moisturizing and hydrating her skin. *Id.* ¶¶ 93-94. Perez did

3   not observe any improvement on her skin after use. *Id.* ¶ 95.

4      This lawsuit was field on July 21, 2021, *see* ECF No. 1, and Perez filed the First Amended

5   Complaint on January 10, 2022, *see* ECF No. 47. The Court issued an Order granting in part and

6   denying in part a motion to dismiss the FAC. *See Perez v. Bath & Body Works, LLC*, No. 21-cv-

7   05606-BLF, 2022 WL 2756670 (N.D. Cal. July 14, 2022). On October 28, 2022, Plaintiff filed

8   the operative Second Amended Complaint. *See* SAC. She asserts claims for violation of the

9   Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, SAC ¶¶ 117-27;

10   violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, SAC

11   ¶¶ 128-39; fraud, deceit, and/or misrepresentation, SAC ¶¶ 140-50; negligent misrepresentation,

12   SAC ¶¶ 151-58; violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*,

13   SAC ¶¶ 159-69; and a quasi-contract claim for restitution, SAC ¶¶ 170-74. Perez seeks to

14   represent a class of all persons who purchased any of the Products from BBW in California from

15   July 21, 2017 to the present. *Id.* ¶¶ 105-16.

16   **II. LEGAL STANDARD**

17      A party may challenge the Court's subject matter jurisdiction by bringing a motion to

18   dismiss under Federal Rule of Civil Procedure 12(b)(1). "[T]he 'irreducible constitutional

19   minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136

20   S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The

21   plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

22   conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

23   *Id.* (citing *Lujan*, 504 U.S. at 560-61). "A plaintiff bears the burden of demonstrating that her

24   injury-in-fact is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged

25   action; and redressable by a favorable ruling.'" *Davidson v. Kimberly-Clark Corporation*, 889

26   F.3d 956 (9th Cir. 2018) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149

27   (2010)); *see also Spokeo*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal

28   jurisdiction, bears the burden of establishing these elements." (citing *FW/PBS, Inc. v. Dallas*, 493

United States District Court
Northern District of California

3

1   U.S. 215, 231 (1990))).

2   **III.    ANALYSIS**

3       **A.    Injunctive Relief**

4           **1.  Standing**

5       BBW argues that Perez lacks standing to pursue injunctive relief because she cannot

6   establish injury.  MTD at 5-10.  BBW also argues that Perez lacks standing to pursue injunctive

7   relief because her requested injunction is not traceable to her alleged injuries and because it is

8   beyond the Court's ability to redress.  *Id.* at 10-12.

9       BBW first argues that Plaintiff cannot establish an injury in fact.  MTD at 5-10.

10  Defendants argue that Plaintiff cannot allege a desire to purchase the product as advertised in the

11  future, which is required under case law.  *Id.* at 7-8.  BBW asserts that Plaintiff could never allege

12  that she wanted to purchase the product as advertised because she also alleges it is scientifcally

13  impossible for hyaluronic acid to retain 1,000x its weight in water.  *Id.* at 8.  Finally, BBW also

14  asserts that because Plaintiff alleges that the 1,000x claim is false, there is no danger that she be

15  misled in the future.  *Id.* at 9.

16      The Ninth Circuit addressed the availability of injunctive relief to a previously deceived

17  consumer who brings a false advertising claim in *Davidson*.  *See* 889 F.3d 956.  In that case, the

18  plaintiff alleged that the product, Scott Wipes that were labeled as "flushable," were not in fact

19  flushable.  *Id.* at 961-62.  The Ninth Circuit recognized it was "an open question in this circuit to

20  what extent a previously deceived consumer who brings a false advertising claim can allege that

21  her inability to rely on the advertising in the future is an injury sufficient to grant her Article III

22  standing to seek injunctive relief."  *Id.* at 967.  The court held "that a previously deceived

23  consumer may have standing to seek an injunction against false advertising or labeling, even

24  though the consumer now knows or suspects that the advertising was false at the time of the

25  original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or

26  hypothetical' threat of future harm."  *Id.* at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S.

27  488, 493 (2009)).  The court identified two examples of threatened future harm.  "In some cases,

28  the threat of future harm may be the consumer's plausible allegations that she will be unable to

United States District Court
Northern District of California

4

1    rely on the product's advertising or labeling in the future, and so will not purchase the product

2    although she would like to." *Id.* at 969-70.  "In other cases, the threat of future harm may be the

3    consumer's plausible allegations that she might purchase the product in the future, despite the fact

4    it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume

5    the product was improved." *Id.* at 970.  The court thus indicated it was "not persuaded that

6    injunctive relief is *never* available for a consumer who learns after purchasing a product that the

7    label is false." *Id.* (emphasis in original) (quoting *Duran v. Creek*, No. 3:15-cv-05497-LB, 2016

8    WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016)).

9            The court ultimately determined that the plaintiff in that case had standing to seek

10    injunctive relief because she faced an imminent or actual threat of future harm, and her injury was

11    concrete and particularized.  *Davidson*, 889 F.3d at 971-72.  The Ninth Circuit stated that she had

12    alleged "that she facts an imminent or actual threat of future harm" based on her allegations "that

13    she desires to purchase Kimberly-Clark's flushable wipes" because flushable wipes are more

14    sanitary.  *Id.* at 971.  The injury was particularized because it would affect the plaintiff "as a direct

15    consumer" of the product, "in a personal and individual way." *Id.*  And the injury—"her inability

16    to rely on the validity of the information advertised on Kimberly-Clark's wipes despite her desire

17    to purchase truly flushable wipes"—was concrete.  *Id.*  The Ninth Circuit explained that the

18    plaintiff faced "the similar injury of being unable to rely on [the defendant's] representations of its

19    product in deciding whether or not she should purchase the product in the future." *Id.* at 971-72.

20            The Ninth Circuit again addressed the issue in 2021, this time in the context of an appeal

21    of an order granting class certification.  *See In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,

22    No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021).  In that case, the plaintiffs alleged that

23    the following statement was misleading—"*no artificial flavors. no preservatives added. since*

24    *1886*"—because the product included phosphoric acid, which is a chemical preservative or

25    artificial flavor.  *Id.* at *1.  The Ninth Circuit determined that the plaintiffs had not demonstrated a

26    threat of future harm sufficient to support their claim for injunctive relief.  *Id.*  The court noted that

27    "[n]one of the plaintiffs in this case allege a desire to purchase Coke *as advertised*, that is, free

28    from what they believe to be artificial flavors or preservatives, nor do they allege in any other

United States District Court
Northern District of California

5

1    fashion a concrete, imminent injury." *Id.* at \*2 (emphasis in original).  In that case, the plaintiffs

2    "ha[d] 'each stated that if Coke were properly labeled, they would consider purchasing it.'" *Id.*

3    The court stated that "such an abstract interest in compliance with labeling requirements is

4    insufficient, standing alone, to establish Article III standing" and that "the imminent injury

5    requirement is not met by alleging that the plaintiffs would *consider* purchasing Coke." *Id.*

6    (emphasis in original).

7           The court addressed various groups of plaintiffs.  *In re Coca-Cola*, 2021 WL 3878654 at

8    \*2.  It determined two plaintiffs did not have standing to seek injunctive relief because they did

9    not have any stated desire to purchase Coke in the future.  *Id.*  It determined that four other

10   plaintiffs did not have standing to seek injunctive relief because their "declarations that they would

11   'consider' purchasing properly labeled Coke are insufficient to show an actual or imminent threat

12   of future harm." *Id.*  And finally, it addressed two plaintiffs who "explained that they were not

13   concerned with phosphoric acid, but rather with whether Coca-Cola was telling the truth on its

14   product's labels." *Id.*  Both plaintiffs stated that "they would be interested in purchasing Coke

15   again if its labels were accurate, regardless of whether it contained chemical preservatives or

16   artificial flavors." *Id.*  The court explained that a plaintiff "cannot satisfy the demands of Article

17   III by alleging a bare procedural violation." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1550).  It continued

18   that "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III."

19   *Id.* (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021)).  The Ninth Circuit

20   therefore concluded that these plaintiffs did not have standing to seek injunctive relief, as their

21   "desire for Coca-Cola to truthfully label its products, without more, is insufficient to demonstrate

22   that they have suffered any particularized adverse effects." *Id.*

23          Plaintiff alleges as follows:

24                 Ms. Perez continues to want to purchase Bath & Body Works
                   products that could help improve the appearance of her skin,
25                 including, specifically, Bath & Body Works Hyaluronic Acid and
                   moisturizing products such as those described above. She desires to
26                 purchase these and other cosmetic products from B&BW, and
                   regularly visits B&BW stores where Defendants' products are sold.
27                 Without purchasing and having the Products professionally tested or
                   consulting scientific experts, Ms. Perez will be unable to determine if
28                 representations that Defendants make regarding the properties and

United States District Court
Northern District of California

1
2
3
4
5
6
7

> features of its products are true. Ms. Perez understands that the formulation of Defendants' Products may change over time or that Defendants may choose to market other products that contain misleading representations about the product. But as long as Defendants may use inaccurate representations about the capabilities of their hyaluronic acid products, then when presented with Defendants' advertising, Ms. Perez continues to have no way of determining whether the representations regarding those capabilities are true. Thus, Ms. Perez is likely to be repeatedly presented with false or misleading information when shopping and unable to make informed decisions about whether to purchase Defendants' products. Thus, she is likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to utilize accurate representations regarding the actual capabilities of hyaluronic acid.

8   SAC ¶ 97. The Court determines that these allegations are sufficient to survive a motion to

9   dismiss. Perez alleges that she continues to want to buy BBW products, including the Hyaluronic

10   Acid Products at issue in this case. But she cannot determine whether the representations on the

11   Products are true. This falls into one of the types of injury identified in *Davidson*—"the threat of

12   future harm may be the consumer's plausible allegations that she will be unable to rely on the

13   product's advertising or labeling in the future, and so will not purchase the product although she

14   would like to." 889 F.3d at 969-70.

15        BBW argues that this matter is distinguishable from *Davidson* because there, the wipes

16   could conceivably be flushable, but here, Plaintiff alleges that the 1,000x claim scientifically could

17   not be true. MTD at 8. But the Court declines to look at the threatened injury so narrowly. *See*

18   Opp. at 7. "Where standing is premised entirely on the threat of repeated injury, a plaintiff must

19   show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson*, 889

20   F.3d at 967 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "In determining

21   whether an injury is similar, [a court] 'must be careful not to employ too narrow or technical an

22   approach.'" *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001)). "Rather, [a

23   court] must examine the questions realistically: [it] must reject the temptation to parse too finely,

24   and consider instead the context of the inquiry.'" *Id.* (quoting *Armstrong*, 275 F.3d at 867). In

25   *Davidson*, the Ninth Circuit explained that the plaintiff "face[d] the similar injury of being unable

26   to rely on [defendant's] representations of its product in deciding whether or not she should

27   purchase the product in the future." *Id.* at 971-72 (citing *Lyons*, 461 U.S. at 111). The Court

28   determines that the plaintiff faces the same injury here.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In a similar vein, BBW points to language in *In re Coca-Cola* in arguing that the plaintiff

2    needs to allege a desire to purchase the product as advertised.  MTD at 7.  But the Ninth Circuit

3    stated that "[n]one of the plaintiffs in this case allege a desire to purchase Coke *as advertised*, that

4    is, free from what they believe to be artificial flavors or preservatives, nor do they allege in any

5    other fashion a concrete, imminent injury."  2021 WL 3878654, at *2 (emphasis in original).  The

6    Ninth Circuit thus left open the possibility that a plaintiff could allege "a concrete, imminent

7    injury" even without alleging a desire to purchase the product "as advertised."  Further, as

8    Defendants note, that case was decided on a motion for class certification, not at the pleading

9    stage, and the plaintiffs there only stated that they would *consider* buying the products in the

10    future, while Plaintiff here alleges that she would like to buy the products in the future.

11    This case is distinguishable from *Anthony v. Pharmavite*, which Defendants rely on.  MTD

12    at 8-9; *see* No. 18-cv-02636-EMC, 2019 WL 109446 (N.D. Cal. Jan. 4. 2019).  In that case, the

13    court found that the plaintiffs did not have standing to seek injunctive relief.  2019 WL 109446, at

14    *6.  The plaintiffs did not allege that they intended to purchase the products—biotin

15    supplements—again in the future.  *Id.*  And the claim was based on the premise that biotin

16    supplements "are unneeded, superfluous, and will not provide any benefits to anyone without a

17    biotin deficiency."  *Id.*  Because the plaintiffs alleged that there was nothing the defendant,

18    Pharmavite, could do to change the advertising or product to make the supplements beneficial, the

19    court concluded that the plaintiffs did "not face the 'injury of being unable to rely on

20    [Pharmavite]'s representations of its [Biotin Products] in deciding whether or not [they] should

21    purchase the [Biotin Products] in the future.'"  *Id.* (alterations in original) (quoting *Davidson*, 889

22    F.3d at 971-72).  Here, the Plaintiffs are not alleging that the Hyaluronic Products are completely

23    useless; instead, they are alleging that the 1,000x claim about hyaluronic acid is false.  Even if

24    hyaluronic acid cannot retain 1,000 times its weight in water, it is not necessarily useless as a

25    moisturizer.  Therefore, Plaintiff could plausibly still want to purchase the Products, and Plaintiff

26    alleges that she does want to purchase the Products.

27    Defendants also argue that Plaintiff's allegations as to a desire to purchase the Products in

28    the future should be discounted because they were only added in the SAC and because she alleges

8

1   that the products "don't work and are essentially worthless."  MTD at 7-8.  Plaintiff counters that

2   she nowhere alleges that the products "don't work" or are "totally worthless," and she argues that

3   this question is improper to decide on a motion to dismiss.  Opp. at 9-10.  She also notes that, in

4   the previous complaint, she alleged that she was willing to buy BBW "beauty" products.  *Id.* at 9.

5   The Court agrees with Plaintiff.  The Court must accept all allegations as true at the motion to

6   dismiss stage and, as noted by Plaintiff, if it discounted the allegation because it was added in the

7   SAC, "there would be no point in granting leave to amend."  *Roffman v. Perfect Bar, LLC*, No. 22-

8   cv-02479-JSC, 2023 WL 174961, at *2 (N.D. Cal. Jan. 12, 2023).

9           Defendants also argue that the injunction requested by Plaintiff in the SAC is improper.

10   MTD at 10-12.  Plaintiff requests the Court :

11   
12   
13   
14   
15   
16   
17   
18               Enjoin[] Defendants, . . . in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any product containing hyaluronic acid, from making a representation about the product's or ingredient's ability to hold, retain, or absorb water in any quantity and from any source unless, at the time the representation is made, Defendants possess and rely upon competent and reliable evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields, to support such representation. For the purposes of this paragraph, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.

19   SAC, Prayer for Relief, ¶ C.

20           BBW argues that the requested injunction is overly broad and not related to the alleged

21   misrepresentation—the 1,000x claim.  MTD at 11.  Therefore, Defendants argue, Plaintiff has not

22   met the requirements that her injury be traceable to the misrepresentation and that it be redressable

23   by the Court.  *Id.*  Perez asserts that it is premature to dismiss the request for an injunction because

24   of how the injunction is stated in the Prayer for Relief.  Opp. at 10-12.

25           The Court agrees with Plaintiff.  Under Rule 8(a)(3), a complaint must contain "a demand

26   for the relief sought."  Fed. R. Civ. P. 8(a)(3).  Under Rule 54(c), a district court must grant "the

27   relief to which each party is entitled, even if the party has not demanded that relief in its

28   

United States District Court
Northern District of California

1    pleadings." Fed. R. Civ. P. 54(c). The Court agrees that it is premature to dismiss the request for

2    injunctive relief based upon the language in the Prayer for Relief. At the conclusion of the case, if

3    Plaintiff is entitled to injunctive relief, the Court is required to fashion an appropriate injunction at

4    that time. It is not restricted to the exact language requested in the operative complaint.

5    Therefore, it would be premature to dismiss the claim for injunctive relief based on the language

6    in the SAC.

7           BBW's motion to dismiss all claims for injunctive relief for lack of standing is thus

8    DENIED.

9                        **2.  Mootness**

10          BBW also argues that injunctive relief is improper because there is nothing to enjoin.

11   MTD at 12-14. BBW argues that Plaintiff has no evidentiary support that it continues to sell the

12   Products. *Id.* at 12-13. BBW claims that Plaintiff's allegation that sales are continuing is

13   "conclusory," and the Court should dismiss the request for injunctive relief on this basis. *Id.* at 13.

14   Plaintiff responds that whether the claim is moot is a factual question that cannot be decided on a

15   motion to dismiss. Opp. at 12-13.

16          The Court agrees with Plaintiff. At the motion to dismiss, the Court must accept as true

17   the allegations in the pleadings. Perez alleges that the 1,000x claim was made "[t]hroughout the

18   class period and continuing to the present." SAC ¶ 52; *see also* SAC ¶ 138 ("Defendants continue

19   to make the false 1,0000X claim in connection with their sales of Hyaluronic Acid Hand Cream.").

20   Plaintiff's allegations, taken as true, are sufficient to survive a motion to dismiss.

21   **B.     Standing to Pursue Claims Regarding Body Polish**

22          BBW challenges Perez's standing to pursue claims challenging the BBW Mineral Body

23   Polish. MTD at 14-15. Perez only purchased the Hyaluronic Hydrating Body Cream. SAC ¶ 93.

24   The Court previously granted with leave to amend BBW's motion to dismiss for lack of standing

25   as to unpurchased products. *Perez*, 2022 WL 2756670, at *7-8. In amending her complaint,

26   Plaintiff added allegations for the additional products—the Hand Cream, Hydrating Body Wash,

27   Hydrating Body Gel Lotion, and Mineral Body Polish. SAC ¶¶ 61-64. Defendants ask the Court

28   to dismiss the claims as to the Mineral Body Polish. MTD at 14-15.

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1      In the SAC, Plaintiff added the product labels for the Hand Cream, Hydrating Body Wash,

2 and Hydrating Body Gel Lotion.  SAC ¶¶ 61-64.  All included the 1,000x claim.  *Id.*  But Plaintiff

3 did not add the product label for the Mineral Body Polish; she instead submitted a screenshot of

4 the product from BBW's website.  SAC ¶ 64.  She alleges that the 1,000x claim was made "on

5 [BBW's] website and point-of-sale advertising."  *Id.*  Defendant argues that Plaintiff has not

6 shown substantial similarities between the purchased product—the Hydrating Body Cream—and

7 the Body Polish because there is no allegation that the Body Polish label included the 1,000x

8 claim.  MTD at 14-15.  BBW notes that the screenshot of the Body Polish in the SAC does not

9 show the back label or top or bottom of the product, nor the product's ingredients.  *Id.*

10     To pursue claims based on non-purchased products, a plaintiff must allege facts sufficient

11 to show that there are substantial similarities between purchased and non-purchased products.  *See*

12 *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1141-42 (N.D. Cal. 2013).  Courts look to

13 factors such as "whether the challenged products are of the same kind, whether they are comprised

14 of largely the same ingredients, and whether each of the challenged products bears the same

15 alleged mislabeling."  *Leonhart v. Nature's Path Foods, Inc*, No. 13-cv-00492-BLF, 2014 WL

16 6657809, at *3 (N.D. Cal. Nov. 21, 2014) (quoting *Wilson*, 961 F. Supp. 2d at 1141).

17     The Court finds that Perez's allegations are insufficient to support the inference that the

18 Body Polish is substantially similar to the Hydrating Body Cream.  Perez has not alleged that the

19 claim at issue—the 1,000x claim—can be found on the product labeling of the Body Polish.  *See*

20 SAC.  An allegation that the claim appears on the website for the Body Polish is insufficient to

21 show a substantial similarity.

22     BBW's motion to dismiss all claims as to the Mineral Body Polish for lack of standing is

23 thus GRANTED.  Plaintiff already had two opportunities to amend the complaint.  Therefore, the

24 motion to dismiss the claims as to the Mineral Body Polish is granted WITHOUT LEAVE TO

25 AMEND.

26 **IV.   ORDER**

27     For the foregoing reasons, IT IS HEREBY ORDERED that:

28     1.      Defendants' motion to dismiss the claim for injunctive relief is DENIED; and

11

2.      Defendants' motion to dismiss all claims as to the Mineral Body Polish is GRANTED WITHOUT LEAVE TO AMEND.

Dated:  May 15, 2023

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12